**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN CA 313138)
SHarutyunyan@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

**JENNER & BLOCK LLP**
Adam G. Unikowsky (*pro hac vice pending*)
AUnikowsky@jenner.com
1099 New York Ave NW
Washington, DC 20001
Telephone: 202 639-6000
Facsimile: 202 639-6066

*Attorneys for Defendant*
*Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASSAN WRIGHT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>UBER TECHNOLOGIES, INC., d/b/a Uber Eats,<br><br>Defendant. | Case No. 3:26-cv-07753-JD<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 12, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James Donato |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTE THAT on November 12, 2026, at 11:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Judge James Donato, Defendant Uber Technologies, Inc. ("Uber") will, and hereby does, move the Court for an order to compel individual arbitration of the claims of Plaintiff Hassan Wright ("Plaintiff") and stay this action pending the completion of the individual arbitration proceedings.

Uber brings this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., on the ground that Plaintiff's claims are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate his claims individually. Plaintiff assented to a binding arbitration agreement in Uber's Terms of Use that squarely covers Plaintiff's claims and this dispute. Uber asks the Court to enter an order enforcing the arbitration agreement, compelling individual arbitration of Plaintiff's claims, and staying this action accordingly.

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities in Support Thereof; the Declaration of Allison Gordon, and all exhibits thereto; all documents in the Court's file; and on such other arguments as may be presented to the Court. Pursuant to Local Rule 7-2(c), a proposed order accompanies this Motion.

Respectfully submitted,

Dated: September 25, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*
Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
** Pro hac vice pending*

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

I. Uber Eats Is a Food Delivery Service Governed by the Relevant Terms of Use. ..... 1

II. Plaintiff Accepted Uber's Terms. ..... 2

III. The Terms Contain a Broad Arbitration Agreement and a Delegation Agreement. ..... 2

IV. Plaintiff Filed this Lawsuit in Violation of the Terms. ..... 3

ARGUMENT ..... 4

I. The Parties Formed an Arbitration Agreement Governed by the FAA. ..... 4

II. The Delegation Agreement Should Be Enforced. ..... 5

A. The Delegation Agreement Clearly and Unmistakably Delegates Threshold Arbitrability Issues to the Arbitrator. ..... 5

B. The Delegation Agreement Is Not Otherwise Unconscionable. ..... 7

III. The Mass Action Waiver and the Class Action Waiver Are Both Enforceable. ..... 8

A. The Mass Action Waiver Does Not Nullify the Arbitration Agreement. ..... 8

B. The Mass Action Waiver and the Class Action Waiver Are Not Unconscionable. ..... 9

1. Plaintiff Cannot Benefit from His Challenge to the Mass Action Waiver. ..... 9

2. There Is No Procedural Unconscionability. ..... 10

3. The Mass Action Waiver Is Not Substantively Unconscionable. ..... 11

4. The FAA Preempts Any Argument That the Class Action Waiver Is Substantively Unconscionable. ..... 12

IV. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable. ..... 13

A. The Pre-Arbitration Dispute Resolution Conference Is Not Unconscionable. ..... 13

B. The Grouping Provision Is Not Unconscionable. ..... 14

C. Other Miscellaneous Provisions Challenged by Plaintiff Are Not Unconscionable. ..... 15

V. This Lawsuit Must Be Stayed Pending Arbitration....................15

CONCLUSION....................15

# TABLE OF AUTHORITIES

## CASES

*Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867 (N.D. Cal. 2023)....7

*Almond v. Uber Technologies, Inc.*, No. CGC-25-630922, Order Granting Motion to Compel Arbitration (Cal. Super. Ct., S.F. Cnty. May 21, 2026)....5

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669 (Cal. 2000)....10

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)....5, 9, 12, 14

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023)....13

*Bishay v. Marshack (In re Bishay)*, 2012 WL 5236169 (B.A.P. 9th Cir. Oct. 24, 2012)....9

*Booth v. United States*, 914 F.3d 1199 (9th Cir. 2019)....12

*Burkhardt v. Extra Space Management, Inc.*, 2025 WL 2172287 (E.D. Cal. July 31, 2025)....11

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022)....6, 7

*Cordas v. Uber Technologies, Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017)....4, 10

*Davis v. Experian Information Solutions, Inc.*, 2025 WL 2998157 (N.D. Cal. Oct. 24, 2025)....5

*Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023)....11

*Employers Insurance of Wausau v. National Union Fire Insurance Co. of Pittsburgh*, 933 F.2d 1481 (9th Cir. 1991)....11

*Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018)....12

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024)....6

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000)....12

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025)....4, 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)....4, 6

*Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021)....9, 13, 15

*Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023)....7

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....11

*Huber v. Uber Technologies, Inc.*, No. 25CU012082C, Minute Order (Cal. Super. Ct., S.F. Cnty. Jan. 8, 2026) ..... 7

*Jenkins v. PetSmart, LLC*, 2023 WL 8548677 (E.D. Pa. Dec. 11, 2023) ..... 11

*Jones v. Starz Entertainment, LLC*, 129 F.4th 1176 (9th Cir. 2025) ..... 5

*Keller v. Chegg, Inc.*, 2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ..... 10

*Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024) ..... 5

*Longboy v. Pinnacle Property Management Services, LLC*, 718 F. Supp. 3d 1004 (N.D. Cal. 2024) ..... 10

*Mafaher v. Uber Technologies, Inc.*, No. 25STCV17232, Order (Cal. Super. Ct., L.A. Cnty. May 1, 2026) ..... 7

*McCaffrey Group, Inc. v. Superior Court*, 169 Cal. Rptr. 3d 766 (Ct. App. 2014) ..... 10

*Mitton v. State Bar of California*, 455 P.2d 753 (Cal. 1969) ..... 14

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016) ..... 6, 7

*Olson v. FCA US, LLC*, 176 F.4th 612 (9th Cir. 2026), *petition for cert. filed*, No. 26-228 (U.S. Aug. 21, 2026) ..... 6

*Platt Pacific, Inc. v. Andelson*, 862 P.2d 158 (Cal. 1993) ..... 14

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) ..... 15

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ..... 5

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) ..... 15

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ..... 15

*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ..... 7

*Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945 (N.D. Cal. Nov. 9, 2023) ..... 9, 15

*Taylor v. Shutterfly, Inc.*, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ..... 7

*In re Tesla Advanced Driver Assistance Systems Litigation*, 2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) ..... 6

*Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621 (Ct. App. 2014) ..... 6

*Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544 (Ct. App. 2006) ..... 11

*Wisniewski v. Clary*, 120 Cal. Rptr. 176 (Ct. App. 1975) ..... 13

*Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868 (N.D. Cal. 2025)....................5

**STATUTES**

9 U.S.C. § 1, *et seq*....................1

9 U.S.C. § 2....................5

9 U.S.C. § 3....................15

**OTHER AUTHORITIES**

ADR Services, Inc., *Arbitration Rules* (updated Oct. 7, 2024), https://tinyurl.com/2xusheu4....................12

JAMS, *Mass Arbitration Procedures and Guidelines* (eff. May 1, 2024), https://tinyurl.com/ytz56n4e....................12

S.D.N.Y., *Mediation Program Procedures* (Aug. 7, 2023), https://tinyurl.com/46tymkpf....................14

## INTRODUCTION

Plaintiff Hassan Wright is a user of Uber Eats, an on-demand food delivery platform offered by Uber Technologies, Inc. ("Uber"). Plaintiff filed this putative class action on behalf of consumers who paid a "priority fee" for a delivery that the Uber Eats app represented as deliverable "direct to you" but whose orders were allegedly delivered with intervening stops. He asserts claims under various California state laws and seeks a declaration that Uber's arbitration agreement is void, invalid, and unenforceable.

The Court should compel arbitration of Plaintiff's claims under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"). Plaintiff agreed to resolve any disputes arising from his relationship with Uber through individualized arbitration ("Arbitration Agreement"). This lawsuit falls squarely within the scope of that agreement. And while the Complaint argues at length that the Arbitration Agreement is unconscionable, the Arbitration Agreement contains a Delegation Agreement that clearly and unmistakably requires an arbitrator, not this Court, to resolve the balance of Plaintiff's arbitrability challenges.

The few challenges that are properly before this Court—Plaintiff's challenges against the Delegation Agreement itself, the Mass Action Waiver, and Class Action Waiver—are meritless. Plaintiff fails to specifically allege that the Delegation Agreement is unenforceable, and there is no reason for this Court to depart from well-established precedent honoring arbitration agreements that contain provisions similar to the Mass Action Waiver and Class Action Waiver in Uber's Terms. Accordingly, the Court should compel individual arbitration and stay this matter pending resolution of the arbitration.

## STATEMENT OF FACTS

### I. Uber Eats Is a Food Delivery Service Governed by the Relevant Terms of Use.

Uber is a technology company that develops and operates digital marketplace platforms, including Uber Eats, an on-demand delivery service for restaurant meals, groceries, and other products. Decl. of Allison Gordon ("Gordon Decl.") ¶ 4. Uber Eats matches users who place orders with drivers who accept the request and pick up the order from the selected merchant for delivery to the user. *Id.*

Uber has one set of consumer-facing Terms of Use that governs the use of Uber Eats. *Id.* ¶¶ 5, 15, Ex. E ("Terms"). Any user who wishes to access the Uber Eats App must first go through the sign-up process and agree at the time of his registration to Uber's Terms. *Id.* ¶ 5.

## II. Plaintiff Accepted Uber's Terms.

Plaintiff created an Uber account in December 2017 and, as a condition of using Uber's platform, agreed to the Terms at the time of his registration. Gordon Decl. ¶ 8, Ex. A. Uber periodically requires its users to consent to updates in its Terms. *Id.* ¶¶ 6, 9–12, Ex. C. Since becoming an Uber accountholder, Plaintiff consistently used Uber's services—including Uber Eats—and repeatedly consented to its Terms. *Id.* ¶¶ 13, 15. The allegations in Plaintiff's Complaint are based on Uber's Terms effective as of June 9, 2026. Compl. ¶ 71. Plaintiff assented to a version of the Terms substantively identical to the June 9, 2026 Terms on April 2, 2026. Gordon Decl. ¶¶ 13, 15–16. Since creating his account, Plaintiff has used Uber's services frequently; in 2026, he requested on average 11 Uber Eats deliveries per month. *Id.* ¶ 15.

## III. The Terms Contain a Broad Arbitration Agreement and a Delegation Agreement.

Uber's Terms include a comprehensive Arbitration Agreement that covers any dispute arising out of or relating to the Terms or Plaintiff's use of Uber's platform at any time. Terms § 2(a)(1). The Arbitration Agreement excludes individual small claims cases, individual cases of sexual assault or sexual harassment, and intellectual property claims seeking equitable relief. Terms § 2(b). The Arbitration Agreement includes a Class Action Waiver and a Mass Action Waiver. The Class Action Waiver bars either party from pursuing any dispute "as a class, collective, coordinated, consolidated, and/or representative action"—though it does not prevent either party from participating in a class settlement. Terms § 2(a)(2). The Mass Action Waiver similarly precludes resolution of disputes as a "Mass Action," defined as a proceeding in which a party is represented by counsel who has filed 50 or more substantially similar arbitration demands against the other party within 180 days. Terms § 2(a)(3).

In the event of a Mass Action, either party may opt out of arbitration within thirty days to proceed with their claims on an individual basis in court. Terms § 2(a)(3)(b). If neither party opts out, the Terms establish an efficient means of resolving the mass arbitration: a Special Master resolves common threshold procedural disputes, with claims withstanding that threshold review proceeding to individualized arbitration in groups of no more than one hundred. Terms § 2(a)(3)(c). Uber bears all Special Master and Dispute Procedure costs, and filing fee obligations are stayed during Special Master proceedings—meaning that no claimant faces out-of-pocket expense while the threshold process runs its course. Terms § 2(a)(3)(b). Every claimant whose claim moves forward receives an individual hearing before an

arbitrator who is expressly *not* bound by decisions in any other proceeding. Terms § 2(g).

The Arbitration Agreement includes a Delegation Agreement which, with specified exceptions, provides that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable." Terms § 2(a)(4). The arbitrator also has "exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel." *Id.* The Delegation Agreement carves out two exceptions, expressly stating that the court will adjudicate challenges to the Class Action Waiver and the Mass Action Waiver. *Id.*

As a condition precedent to commencing arbitration, the Terms require Uber and Plaintiff to participate in an individualized informal dispute resolution conference. Terms § 2(d). Counsel for both parties may attend and fully participate. The applicable statute of limitations is tolled for the duration of the conference period. *Id.*

The Arbitration Agreement includes several provisions designed to ensure that the arbitration agreement is fair to the users. A claimant's responsibility to pay filing, administrative, and arbitrator fees does not exceed the amount the claimant would be required to pay if she filed her claim in court. Terms § 2(h). Any claimant with a gross monthly income of less than 300% of the federal poverty guidelines can seek a waiver of arbitration fees and costs, exclusive of arbitrator fees. *Id.* And arbitration takes place in the claimant's home county. Terms § 2(e).

## IV. Plaintiff Filed this Lawsuit in Violation of the Terms.

Plaintiff brings claims on behalf of a putative class of Uber Eats users who paid for a priority delivery but allegedly did not receive the uninterrupted delivery that they believed were promised. Compl. ¶¶ 1–15, 159–160. Plaintiff asserts claims under California's Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, and common law fraud. *Id.* ¶¶ 171–215. Plaintiff seeks injunctive relief, restitution, and damages. *Id.* ¶ 216. Plaintiff also contends the Arbitration Agreement is unenforceable and seeks a declaration that the Arbitration Agreement is void in its entirety. *Id.* ¶ 216-I.

**ARGUMENT**

This Court should compel arbitration and stay the case. Under the FAA, Plaintiff must arbitrate his claims on an individual basis. The Arbitration Agreement contains a valid Delegation Agreement that, with two specified exceptions, clearly and unmistakably commits gateway questions of arbitrability to an arbitrator. The Court should enforce the Delegation Agreement and refer all threshold challenges—other than challenges to the Class Action Waiver and Mass Action Waiver—to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 67–68 (2019).

**I. The Parties Formed an Arbitration Agreement Governed by the FAA.**

Plaintiff is a party to the Arbitration Agreement. The Terms, including the Arbitration Agreement therein, are a contract between Plaintiff and Uber. Plaintiff assented to Uber's Terms—and the Arbitration Agreement contained therein—when he affirmed his consent to the Terms. Gordon Decl. ¶¶ 8–9, 13. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990–91 (N.D. Cal. 2017) (accountholder's assent to Uber's terms when signing up for an account satisfied contract-formation requirements).

The Arbitration Agreement also covers this dispute. Plaintiff's claims arise from his use of the Uber Eats service and fall squarely within the Covered Disputes provision of the Arbitration Agreement. Terms § 2(a)(1); Compl. ¶¶ 15–16, 59. Plaintiff's various attacks against the Arbitration Agreement likewise amount to "disputes arising out of or relating to … these Terms." Terms § 2(a)(1).

Resisting this straightforward conclusion, Plaintiff cites *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), for the proposition that Uber's Terms are "unworthy even of the name of arbitration." Compl. ¶ 71. To the extent Plaintiff invokes *Heckman* to argue that no arbitration agreement was formed, the argument fails. *Heckman* was an unconscionability challenge, not a formation challenge. 120 F.4th at 680 (conducting "Unconscionability Analysis"). Even as to unconscionability, *Heckman* is factually inapposite. There, a subset of "bellwether" arbitrations had binding precedential effect on all other claimants—including those who had no notice of the bellwether proceedings. *Id.* at 678–79. By contrast, Uber's Terms contain no bellwether mechanism, and no decision in any arbitration has any precedential effect on any other claimant's case. Terms § 2(g). Claims are grouped into groups of no more than 100 for case management efficiency, but even within a group, "the arbitrator shall resolve all arbitrations within a group on an *individual basis*." Terms § 2(a)(3)(c)(ii) (emphasis added). The *Heckman*

protocol also included severe limitations on briefing and discovery, a defendant-friendly appeals structure, and a procedure for selecting an arbitrator that conflicted with state law. 120 F.4th at 685–87. Courts have repeatedly distinguished *Heckman* in cases not presenting its idiosyncratic features. *See, e.g.*, *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1182–83 (9th Cir. 2025) ("[*Heckman*] concerned novel arbitration procedures used by New Era ADR … [which] contained all the red flags associated with classwide arbitration."); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1126–27 (S.D. Cal. 2024); *Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868, 877–79 (N.D. Cal. 2025); *Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157, at *4–6 (N.D. Cal. Oct. 24, 2025). Indeed, the San Francisco County Superior Court recently held that *Heckman* did not apply to Uber's arbitration agreement with its drivers, which is substantially identical to the Arbitration Agreement at issue here. *See Almond v. Uber Techs., Inc.*, No. CGC-25-630922, Order Granting Motion to Compel Arbitration at 10–12 (Cal. Super. Ct., S.F. Cnty. May 21, 2026).

Because the parties entered into an arbitration agreement, the FAA governs the parties' dispute. The Uber Eats platform connects users with drivers and merchants throughout the United States, constituting a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). It embodies a liberal federal policy favoring arbitration and requires courts to enforce arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

## II. <u>The Delegation Agreement Should Be Enforced.</u>

The Complaint alleges that the Arbitration Agreement is unenforceable on numerous grounds. But under the Delegation Agreement those challenges, other than Plaintiff's challenges to the Class Action Waiver and Mass Action Waiver, are reserved for the arbitrator. The Court should enforce the Delegation Agreement and allow the arbitrator to decide Plaintiff's challenges.

### A. <u>The Delegation Agreement Clearly and Unmistakably Delegates Threshold Arbitrability Issues to the Arbitrator.</u>

"A delegation clause is effectively a second arbitration agreement in which the parties agree to arbitrate threshold issues concerning the interpretation or scope of a primary arbitration agreement." *Olson*

*v. FCA US, LLC*, 176 F.4th 612, 617 (9th Cir. 2026), *petition for cert. filed*, No. 26-228 (U.S. Aug. 21, 2026). Arbitrators decide those issues when the arbitration agreement contains clear and unmistakable evidence that the parties intended to delegate those questions to the arbitrator. *See id.* "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 586 U.S. at 71.

The Delegation Agreement satisfies the clear-and-unmistakable standard. It grants the arbitrator exclusive authority over disputes relating to "the interpretation, applicability, enforceability, or formation of this Arbitration Agreement," Terms § 2(a)(4); "any claim that all or any part of this Arbitration Agreement is void or voidable," *id.*; "all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory," *id.*; and "any defense to arbitration, including without limitation waiver, delay, laches, or estoppel," *id.* Language covering "all issues … including issues of enforceability" presents an "easy case" for delegation. *Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621, 630 (Ct. App. 2014) (internal quotation marks omitted). Courts have routinely enforced substantially similar delegation language, including in Uber's Terms. *E.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1026, 1034 (9th Cir. 2022); *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1200–01 (9th Cir. 2024).

The Delegation Agreement includes the following carve-outs:

> However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes concerning the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

Terms § 2(a)(4). Plaintiff claims that these carve-outs amount to "contradictory language" that creates "inherent tension" and nullifies "clear and unmistakable evidence of the parties' intent to delegate arbitrability issues." Compl. ¶¶ 132–137 (quoting *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *6 (N.D. Cal. Sept. 30, 2023)). There is nothing contradictory, however, about two specific exceptions that follow a general delegation; parties are entitled to agree to arbitrate some arbitrability issues and not others. The Ninth Circuit rejected Plaintiff's logic in *Mohamed*, holding that a

broad delegation provision was not rendered ambiguous simply because it contained specific carve-outs. *Mohamed*, 848 F.3d at 1209. Indeed, "[n]umerous courts in this circuit have found that despite a carveout, the question of arbitrability, even on the subject of what has been carved out, must be decided by the arbitrator." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018); *see also Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 878–79 (N.D. Cal. 2023) (collecting cases upholding delegation clauses with carveouts); *Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) ("[A]n express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court."). In keeping with this principle, two California state courts recently enforced prior versions of the Delegation Agreement in Uber's Terms that contained the same carve-outs, concluding that the "delegation clause clearly and unmistakenly delegates the threshold issue of arbitrability to the arbitrator" and rejecting the plaintiff's unconscionability challenge against the delegation clause. *Huber v. Uber Techs., Inc.*, No. 25CU012082C, Minute Order at 6 (Cal. Super. Ct., S.F. Cnty. Jan. 8, 2026) (internal quotation marks omitted); *Mafaher v. Uber Techs., Inc.*, No. 25STCV17232, Order at 4–8 (Cal. Super. Ct., L.A. Cnty. May 1, 2026) (similar). The Court should follow this unbroken line of authority and enforce the Delegation Agreement.

**B. <u>The Delegation Agreement Is Not Otherwise Unconscionable.</u>**

Plaintiff's remaining attacks against the Delegation Agreement fare no better. An unconscionability challenge to the Delegation Agreement must "impugn the validity of the delegation clause[] specifically" and cannot be "a challenge to the enforceability of the arbitration provision as a whole." *Caremark*, 43 F.4th at 1033. In other words, unless the plaintiff can show that "*the delegation of arbitrability to the arbitrator* would be unconscionable," the arbitrator decides arbitrability. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1003 (9th Cir. 2023).

Plaintiff claims that the Delegation Agreement is unenforceable "for many of the same reasons discussed above," incorporating his general challenges against the Arbitration Agreement. Compl. ¶ 138. Those general allegations fail to "specifically" challenge the delegation of arbitrability to the arbitrator. Plaintiff's speculative delay theory—that Uber may invoke the Dispute Procedure for determining a Mass Action, resulting in a delay in the arbitrator's consideration of the delegated issues, Compl. ¶ 139—is a challenge to the Mass Action procedure, which is assigned to the Court, not a challenge to the Delegation

Agreement's separate requirement that disputes on other issues be assigned to the arbitrator.

In any event, as explained below, neither the Delegation Agreement nor the Arbitration Agreement is procedurally or substantively unconscionable: there was neither oppression nor surprise in Plaintiff's assent to the Terms, *see infra* pp. 10–11, and nothing about the routinely-enforced Delegation Agreement is unreasonable or unfair to Plaintiff. Accordingly, the Delegation Agreement should be enforced, and the arbitrator should decide Plaintiff's challenges that are not expressly reserved for the Court.

## III. The Mass Action Waiver and the Class Action Waiver Are Both Enforceable.

The Delegation Agreement leaves challenges to the Class Action Waiver and the Mass Action Waiver for the Court to adjudicate. Terms § 2(a)(4). Both waivers are valid and enforceable.

### A. The Mass Action Waiver Does Not Nullify the Arbitration Agreement.

Plaintiff complains that the Terms' definition of "Mass Action" is so open-ended and vague that Uber could invoke it against virtually any claimant at any time, baldly asserting that "the mass action waiver appears to be triggered anytime multiple consumers are represented by the same counsel or multiple consumers file similar claims." Compl. ¶ 105. According to Plaintiff, because the Mass Action Waiver lets either party opt out of arbitration once a Mass Action is found, there is no "agreement" to resolve claims in arbitration at all. *Id.* ¶¶ 96, 103–108. The Court should reject that claim.

Plaintiff's characterization of the Terms as affording Uber unrestrained discretion to opt out of arbitration is incorrect. The Terms articulate a specific threshold for the Mass Action Waiver: "[T]he definition of a 'Mass Action' includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf." Terms § 2(a)(3)(a). This definition is neither "so open-ended that almost anything can be argued to be a mass action," Compl. ¶ 101, nor "triggered anytime multiple consumers are represented by the same counsel or multiple consumers file similar claims," *id.* ¶ 105. It is certainly not triggered in this case, where Plaintiff is one individual who does not allege that any other individuals have filed or will file substantially similar arbitration demands. The mere presence of the "includ[ing] but [] not limited to" language, Terms § 2(a)(3)(a), does not create an ambiguity that "vitiates" the Arbitration Agreement, Compl. ¶ 101. It is perfectly reasonable for parties to agree on a definition with flexibility built in at the margins. *See Bishay*

*v. Marshack (In re Bishay)*, 2012 WL 5236169, at *7 (B.A.P. 9th Cir. Oct. 24, 2012) ("[T]he existence of minor areas of disagreement will not render the contract void and entirely unenforceable.").

Moreover, the parties' agreement to arbitrate is real and effective because in *every* case involving a dispute covered by the Arbitration Agreement, the parties must proceed to arbitration. If either party contends that the Mass Action Waiver was violated, *the panel of arbitrators* (not Uber) decides whether a violation occurred. Terms § 2(a)(3)(b). Only after the arbitrators resolve *that* threshold dispute may either party (not just Uber) choose to opt out. *Id*. And if the case is not a Mass Action—and this case, involving only one plaintiff, is plainly not—arbitration is mandatory for both sides. *Id*.

**B. The Mass Action Waiver and the Class Action Waiver Are Not Unconscionable.**

Neither the Mass Action Waiver nor the Class Action Waiver is procedurally or substantively unconscionable. Both Waivers effectuate the Supreme Court's mandate that the FAA requires enforcement of individualized arbitration and preempts contrary state law. *See Concepcion*, 563 U.S. at 348.

**1. Plaintiff Cannot Benefit from His Challenge to the Mass Action Waiver.**

At the outset, Plaintiff lacks standing to challenge the Mass Action Waiver because, as explained above, the Mass Action Waiver is irrelevant to Plaintiff. "To assert a right or challenge a violation of a right under a particular provision of a contract, the individual must have been affected by or interacted with the particular provision." *Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945, at *4 (N.D. Cal. Nov. 9, 2023); *see also Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (courts should not "stretch to invalidate contracts based on hypothetical issues"). This is a class action (in which one plaintiff seeks to represent numerous absent class members), not a mass action (in which many claimants assert the same or similar arbitration claims together). Plaintiff offers no theory as to how *this* action could possibly be a "Mass Action"; he merely asserts in conclusory fashion that "multiple similar claims are highly likely" given the volume of Uber's services and that "counsel with expertise in these areas is highly likely to represent other claimants." Compl. ¶ 105. Lest there be any doubt, Uber expressly concedes that an arbitration brought by one claimant, unaccompanied by other similar arbitration, is not a "Mass Action" and would not make that argument in arbitration.

Further, because the Arbitration Agreement has a severability clause, Terms § 2(j), Plaintiff would not benefit from a holding that the Mass Action Waiver is unconscionable—such a holding would merely

result in the severance of a provision that does not affect Plaintiff. The Court should reject Plaintiff's invitation to issue an advisory opinion on the enforceability of the Mass Action Waiver.

### 2. <u>There Is No Procedural Unconscionability.</u>

Under California law, a successful unconscionability challenge requires *both* procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). California applies a sliding-scale approach under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* Procedural unconscionability turns on whether there was "either *oppression* or *surprise*" in the contracting process. *McCaffrey Grp., Inc. v. Super. Ct.*, 169 Cal. Rptr. 3d 766, 781 (Ct. App. 2014). Neither oppression nor surprise was present here.

As to surprise: the Terms required Plaintiff to affirmatively click a box confirming that he had reviewed and agreed to them before accessing Uber's services. Gordon Decl. ¶¶ 9–13. Courts have routinely upheld such agreements. *See Cordas*, 228 F. Supp. 3d at 990–91; *Keller v. Chegg, Inc.*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023) ("Courts routinely find clickwrap agreements valid and enforceable…."). Far from concealing the Arbitration Agreement, the Terms conspicuously state in capitalized text on the first page that the Terms include "THE ARBITRATION AGREEMENT IN SECTION 2 BELOW." Section 2 of the Terms introduces the heading "Arbitration Agreement" in large, boldfaced font and uses underlined subheadings to identify key provisions like the Class Action Waiver, the Mass Action Waiver, and Delegation Agreement. This is sufficiently clear to overcome any allegation of surprise. *See Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1015 (N.D. Cal. 2024) (finding no surprise where terms included on "[t]he very first page … a bolded paragraph" clarifying the requirement to arbitrate and used "clearly labeled capitalized headings" for arbitration-related rules).

As to oppression: Plaintiff had meaningful alternatives to Uber, including competing app-based food delivery services such as DoorDash and Grubhub. "[W]hen the customer has meaningful choices," there "can be no oppression establishing procedural unconscionability." *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Ct. App. 2006); *see Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 953 (N.D. Cal. 2023) (finding only minimal degree of procedural unconscionability in Coinbase's adhesive arbitration agreement where plaintiffs had alternative options for cryptocurrency services).

Given that there is little, if any, procedural unconscionability, a high level of substantive unconscionability would be needed to find the Mass Action Waiver or Class Action Waiver unconscionable. Neither comes close to meeting that threshold.

**3. The Mass Action Waiver Is Not Substantively Unconscionable.**

Far from being unconscionable, the Mass Action Waiver is a reasonable provision addressing the phenomenon in which plaintiffs' firms recruit thousands of unvetted clients and burden arbitration providers with the difficult task of processing mass filings regardless of individual merit. The Mass Action Waiver in the Terms guarantees the parties the right to an arbitral forum on the threshold decision of whether the Mass Action Waiver has been violated and allows either party to opt out if the arbitrator finds such a violation. Courts have repeatedly upheld similar provisions allowing parties to opt out of mass arbitration. *See Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *4–6 (E.D. Cal. July 31, 2025); *Jenkins v. PetSmart, LLC*, 2023 WL 8548677, at *14 (E.D. Pa. Dec. 11, 2023).

Plaintiff's arguments that the Mass Action Waiver unconscionably causes delay do not succeed. Plaintiff argues that Uber can cause delay by arguing that anything is a Mass Action. As already explained, *supra* p. 11, however, the Terms are clear: they define "Mass Action" to include instances in which either party's counsel files 50 or more substantially similar arbitration demands within 180 days. Plaintiff also insists that the Dispute Procedure relating to mass action violations "has no set deadlines, rules, processes or procedures" and could therefore be "protracted and open-ended." Compl. ¶¶ 108, 116. That concern is unpersuasive. Arbitration providers and arbitrators routinely set deadlines, rules, and procedures; there is nothing unconscionable about leaving those details to the discretion of a neutral third party. *See, e.g.*, *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1484 (9th Cir. 1991); *cf. Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (procedural questions arising from a dispute are presumptively for the arbitrator, not the judge). Indeed, most arbitration providers, including ADR Services (which would govern the arbitration brought by Plaintiff, a California resident, Terms § 2(c)), now have mass arbitration protocols, rendering specific language in the arbitration agreement regarding "rules, processes or procedures" (Compl. ¶ 108) unnecessary. *See, e.g.*, ADR Services, Inc., *Arbitration Rules*, Rule 10 (updated Oct. 7, 2024), https://tinyurl.com/2xusheu4; JAMS, *Mass Arbitration Procedures and Guidelines* (eff. May 1, 2024), https://tinyurl.com/ytz56n4e. Nor is there any basis for

predicting delay: the Dispute Procedure asks an arbitrator to resolve a narrow threshold question about whether a Mass Action was filed. Speculation that this will be slow cannot invalidate an arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (refusing to invalidate arbitration agreement where the claimed procedural risk was "too speculative").

Plaintiff's concern that the Mass Action Waiver could cause claims to become time-barred, Compl. ¶¶ 77, 113, is purely theoretical and bears no relation to this case. And if a timely-filed arbitration demand were later dismissed under the Mass Action Waiver and refiled in court, the interval would present a paradigmatic case for equitable tolling. *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019). Further, Uber would likely voluntarily toll under such unusual circumstances.

Plaintiff also challenges the grouping procedures in Section 2(a)(3)(c), but those challenges are not properly before the Court. The Delegation Agreement assigns only Mass Action Waiver challenges to the Court. The grouping procedures, however, apply only where "neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b)"—meaning they come into play only when the parties have chosen not to enforce the Mass Action Waiver. Terms § 2(a)(3)(c). Hence, challenges to the grouping procedures are not challenges to the Mass Action Waiver and are committed to the arbitrator.

**4. <u>The FAA Preempts Any Argument That the Class Action Waiver Is Substantively Unconscionable.</u>**

The FAA requires enforcement of class action waivers in arbitration agreements. *Concepcion*, 563 U.S. at 348; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507–10 (2018). In *Concepcion*, the Supreme Court squarely rejected California's *Discover Bank* rule, under which class action waivers in consumer adhesion contracts were deemed unconscionable per se. 563 U.S. at 348. Any state law rule that would similarly invalidate Uber's Class Action Waiver is preempted by the FAA. *Id.* at 340, 346–52.

Plaintiff identifies nothing in the Class Action Waiver that would warrant departing from the Supreme Court's rulings. Plaintiff's only grievance is that the Terms do not prevent either party "from participating in a class-wide, collective, and/or representative settlement of claims." Compl. ¶ 141 (quoting Terms § 2(a)(2)). Plaintiff somehow interprets this mutually available right to negotiate and settle to mean that Uber can "insulate itself from liability for [a consumer's] claims." *Id.* ¶ 142. Not so. While Plaintiff and Uber can enter into a class settlement if both parties agree, either party can insist on individual

arbitration. Likewise, any class member has the right to opt out of any class settlement and enforce the Arbitration Agreement. The additional option of participating in a classwide settlement does not somehow compromise the right to arbitrate individually, much less render the Class Action Waiver unconscionable.[1]

## IV. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable.

Should the Court determine that the Delegation Agreement is unenforceable, it should still compel arbitration. The Arbitration Agreement is enforceable. As explained in connection with the Mass Action Waiver and the Class Action Waiver, there is no procedural unconscionability. *See supra* pp. 10–11. Nor can Plaintiff show that any provision of the Arbitration Agreement is substantively unconscionable.

### A. The Pre-Arbitration Dispute Resolution Conference Is Not Unconscionable.

Plaintiff alleges that the pre-arbitration conference requirement in Section 2(d) of the Terms is unconscionable because it interferes with the attorney-client relationship. Compl. ¶¶ 76–92. The Delegation Agreement requires this argument to be considered by the arbitrator. But if the Court nonetheless reaches it, there is nothing unconscionable about pre-arbitration dispute resolution procedures, which can be both "reasonable and laudable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023). Like in *Bielski*, Uber's conference requirement applies symmetrically to both parties, and it tolls the statute of limitations for the duration of the pre-dispute process. Terms § 2(d). The requirement for the parties' personal attendance "undoubtedly enhances the chances for settlement because the parties may then become active participants in the settlement negotiations." *Wisniewski v. Clary*, 120 Cal. Rptr. 176, 179 (Ct. App. 1975). Such a requirement facilitates efficient resolution of disputes by allowing the person with ultimate decision-making authority—the claimant herself—to be present for settlement discussions.

The conference requirement does not violate California's Rule of Professional Conduct 4.2. Although ethical concerns might arise if Uber's counsel directly communicated with represented claimants *without* their counsel present, the Terms allow parties to appear with their counsel. Terms § 2(d). Parties routinely attend mediations and settlement conferences alongside their counsel, including where opposing

---

[1] In passing, Plaintiff purports to seek "public injunctive relief," "acting as a private attorney general." Compl. ¶¶ 180, 192. But Plaintiff's claims seek relief on behalf of Uber Eats users with individualized grievances about their experiences using the food delivery service, not the public at large. *Id.* ¶ 160. Plaintiff's claim for injunctive relief therefore cannot proceed. *See Hodges*, 21 F.4th at 548–49 (denying plaintiffs' request for injunctive relief on behalf of all Comcast cable subscribers because the FAA required enforcement of individualized arbitration agreement).

counsel is present. *See, e.g.*, *Wisniewski*, 1200 Cal. Rptr. at 180 (court may compel a litigant "to engage personally in settlement negotiations"); S.D.N.Y., *Mediation Program Procedures*, 6 (Aug. 7, 2023), https://tinyurl.com/46tymkpf (noting that personal attendance is "critical to the effectiveness of the mediation process"). When a party's counsel is present, counsel can readily address any area of concern. *See Mitton v. State Bar of Cal.*, 455 P.2d 753, 758 (Cal. 1969). Plaintiff's observation that a claimant's counsel cannot be obligated to attend the conference, Compl. ¶ 89, is true but also irrelevant. The Terms are not made unconscionable by the prospect that a claimant may hire a lawyer who refuses to show up.

Plaintiff also speculates that Uber might later argue Plaintiff failed to "fully participate" in the pre-dispute process if Plaintiff does not personally communicate with Uber's counsel. Compl. ¶¶ 90, 92. But a person can "fully participate" in a conference even if she communicates through counsel—this happens in mediations and settlement conferences every day. In any event, Plaintiff's speculation about a hypothetical argument Uber might make is no basis to invalidate an arbitration agreement.

Finally, the pre-arbitration notice requirement, which involves "mailing or serving a hard copy of the [arbitration] demand" and "emailing a copy of the arbitration demand," Compl. ¶ 91, is not unconscionable but routine. *See Concepcion*, 563 U.S. at 336 (addressing agreement requiring a "one-page Notice of Dispute form"); *Platt Pac., Inc. v. Andelson*, 862 P.2d 158, 162 (Cal. 1993).

### B. <u>The Grouping Provision Is Not Unconscionable.</u>

The Grouping Provision (Terms § 2(a)(3)(c))—which requires appointment of a Special Master in the event of a Mass Action, followed by grouping of claims—serves a straightforward purpose. It allows a Special Master to resolve common threshold issues— such as "whether claimants have submitted valid fee waivers" or "whether the applicable arbitration provider has complied with the Arbitration Agreement with respect to processing and administering the Mass Arbitration Demands," Terms § 2(a)(3)(c)(i)—that would otherwise have to be addressed claim by claim, multiplying delay and expense.

Plaintiff worries that the Special Master may take too long to resolve threshold issues. Compl. ¶¶ 122–128. Such concern invites illicit "judicial suspicion of … the competence of arbitration tribunals." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). There is no reason to believe that the Special Master would take too long to resolve simple procedural questions. And Plaintiff's concern that the statute of limitations might expire before a claim is processed, Compl. ¶¶ 126–128, misunderstands the

Arbitration Agreement: if a claim is timely filed, any delay associated with the Special Master process would not render that claim untimely. The Terms only pause the *processing* of any Mass Arbitration Demands to which a dispute has been raised, Terms § 2(a)(3)(c)(i); nothing in the Terms states that "consumers are barred from filing new claims while a Special Master is appointed," Compl. ¶ 127.

### C. <u>Other Miscellaneous Provisions Challenged by Plaintiff Are Not Unconscionable.</u>

Each of Plaintiff's remaining challenges—to the intellectual property carve-out, limitations of liability and indemnification provision, the waiver provision, the Rule 11 requirements, the litigation funding provision, and the ADR Arbitration Rules and associated fees, Compl. ¶¶ 140–158—concerns the enforceability of provisions within the Terms and fall under the scope of the Delegation Agreement. Further, Plaintiff does not explain how any of these irrelevant provisions affect him or otherwise bear on this dispute, and accordingly lacks standing to make these abstract attacks. *See Stevenson*, 2023 WL 7434945, at *4; *Hodges*, 21 F.4th at 541. And to the extent Plaintiff implies that an entire arbitration agreement is unconscionable anytime it contains a provision that is in practice asymmetrically applied, Plaintiff is wrong. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) ("Not all one-sided contract provisions are unconscionable." (quotation marks omitted)).

## V. <u>This Lawsuit Must Be Stayed Pending Arbitration.</u>

When a court finds that a lawsuit involves an arbitrable dispute and a party requests a stay, Section 3 of the FAA compels the court to stay the proceedings. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). The Terms independently require a stay. *See* Terms § 2(k).

## <u>CONCLUSION</u>

The Court should compel arbitration and stay this action pending completion of arbitration.

Respectfully submitted,

Dated: September 25, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*

Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
**Pro hac vice pending*