JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

Raphael Janove (SBN 361193)
raphael@janove.law
**JANOVE PLLC**
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940

Liana Vitale (SBN 348772)
liana@janove.law
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

Elizabeth Aniskevich (admitted *pro hac vice*)
eaniskevich@singletonschreiber.com
Jennifer Yadoo (admitted *pro hac vice*)
jyadoo@singletonschreiber.com
Ryan Crosswell (admitted *pro hac vice*)
rcrosswell@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
650 Massachusetts Ave. NW, Suite 600
Washington, DC 20001
Telephone: (619) 771-3473

Anna Haac (admitted *pro hac vice*)
anna@haaclaw.com
**HAAC LAW, LLC**
11810 Grand Park Ave., Suite 500
North Bethesda, MD 20852
Telephone: (240) 389-0199

***Attorneys for Plaintiff and Proposed Classes***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

HASSAN WRIGHT, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

UBER TECHNOLOGIES, INC. d/b/a Uber Eats,

*Defendant*.

Case No. 3:26-cv-07753-JD

**PLAINTIFF'S OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Judge: Hon. James Donato
Date: December 10, 2026
Time: 11:00 a.m.
Courtroom: 11 – 19th Floor

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

# TABLE OF CONTENTS

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 3

I. The Delegation Clause is Not Enforceable. ........ 3

A. The Terms do not clearly and unmistakably delegate arbitrability ........ 3

B. The delegation clause is independently unconscionable. ........ 5

II. The Arbitration Agreement Is Unconscionable. ........ 7

A. The agreement is procedurally unconscionable. ........ 7

B. The agreement is substantively unconscionable and unenforceable ........ 7

1. Uber's pre-arbitration requirements delay and deter claims. ........ 8

2. The Mass Action protocol is unconscionable. ........ 9

3. The FAA does not save Uber's dispute resolution protocol. ........ 13

4. The Class Action Waiver is unenforceable. ........ 13

5. The Terms' remaining one-sided provisions confirm a systematic effort to prevent consumers from vindicating their rights. ........ 14

III. The Foregoing Defects Weigh Decisively Against Severance. ........ 15

CONCLUSION ........ 16

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 | 115 Broadway, 5th Fl. New York, NY 10006 | 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

# TABLE OF AUTHORITIES

**Cases**

*Aggarwal v. Coinbase, Inc.*
685 F. Supp. 3d 867 (N.D. Cal. 2023) .......... 4

*Almond v. Uber Techs., Inc.*
No. CGC-25-630922 (Cal. Super. Ct., S.F. Cnty., May 21, 2026) .......... 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*
24 Cal. 4th 83 (2000) .......... 4, 15

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) .......... 13, 14

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 4, 5, 8

*Blair v. Rent-A-Center, Inc.*
928 F.3d 819 (9th Cir. 2019) .......... 14

*Booth v. United States*
914 F.3d 1199 (9th Cir. 2019) .......... 10

*Burkhardt v. Extra Space Mgmt., Inc.*
2025 WL 2172287 (E.D. Cal. July 31, 2025) .......... 11

*Caremark, LLC v. Chickasaw Nation*
43 F.4th 1021 (9th Cir. 2022) .......... 5

*Davis v. Experian Info. Sols., Inc.*
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) .......... 13

*Discover Bank v. Superior Court*
36 Cal. 4th 148 (2005) .......... 3, 14

*Fisher v. MoneyGram Int'l, Inc.*
66 Cal. App. 5th 1084 (2021) .......... 7

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*
97 F.4th 1190 (9th Cir. 2024) .......... 5

*Gardner v. AMN Healthcare Servs., Inc.*
2025 WL 3751929 (N.D. Cal. Dec. 29, 2025) .......... 12

*Gatton v. T-Mobile USA, Inc.*
152 Cal. App. 4th 571 (2007) .......... 7

*Gerber v. Twitter, Inc.*
2024 WL 5173313 (N.D. Cal. Dec. 18, 2024) .......... 7

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000) .......... 10

*Heckman v. Live Nation Ent., Inc.*
686 F. Supp. 3d 939 (C.D. Cal. 2023) .......... 4

*Heckman v. Live Nation Entertainment, Inc.*
120 F.4th 670 (9th Cir. 2024) .......... 8, 13, 15

*Hodges v. Comcast Cable Commc'ns, LLC*
21 F.4th 535 (9th Cir. 2021) .......... 12, 14

*In re Tesla Advanced Driver Assistance Sys. Litig.*
2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) .......... 3

*Ingle v. Circuit City Stores, Inc.*
328 F.3d 1165 (9th Cir. 2003) .......... 7

*Jack v. Ring LLC*
91 Cal. App. 5th 1186 (2023) .......... 4

*Jenkins v. PetSmart, LLC*
2023 WL 8548677 (E.D. Pa. Dec. 11, 2023) .......... 11

*Jones v. Starz Entertainment, LLC*
129 F.4th 1176 (9th Cir. 2025) .......... 13

*Kohler v. Whaleco, Inc.*
757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......... 13

*Lim v. TForce Logistics, LLC*
8 F.4th 992 (9th Cir. 2021) .......... 12

*MacClelland v. Cellco P'ship*
609 F. Supp. 3d 1024 (N.D. Cal. 2022) .......... 5

*McBurnie v. RAC Acceptance E., LLC*
95 F.4th 1188 (9th Cir. 2024) .......... 14

*McGill v. Citibank, N.A.*
2 Cal. 5th 945 (2017) .......... 14

*Mohamed v. Uber Techs., Inc.*
848 F.3d 1201 (9th Cir. 2016) .......... 5, 7

*O'Malley v. Williams-Sonoma, Inc.*
2026 WL 2640697 (N.D. Cal. Sept. 8, 2026) .......... 8

*Pandolfi v. AviaGames, Inc.*
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) .......... *passim*

*Pandolfi v. Aviagames, Inc.*
2025 WL 2463742 (9th Cir. Aug. 27, 2025) .......... 7, 8

*Parsons v. Ukiah Valley Hosp.*
2026 WL 616495 (N.D. Cal. Mar. 4, 2026) .......... 8

*Peters v. Guaranteed Rate, Inc.*
2024 WL 2925309 (N.D. Cal. June 10, 2024) .......... 12

*Peters v. Guaranteed Rate, Inc.*
2025 WL 1904424 (9th Cir. July 10, 2025) .......... 6

*Peters v. Guaranteed Rate, Inc.*,
2025 WL 3679192 (N.D. Cal. Nov. 18, 2025) .......... 4

*Ramirez v. Charter Commc'ns, Inc.*
16 Cal. 5th 478 (2024) .......... 7, 8, 12, 15

*Rent-A-Center, W., Inc. v. Jackson*
561 U.S. 63 (2010) .......... 3, 5

*Rios v. HRB Digital LLC*
807 F. Supp. 3d 975 (N.D. Cal. 2025) .......... *passim*

*Ronderos v. USF Reddaway, Inc.*
114 F.4th 1080 (9th Cir. 2024) .......... 8

*S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*
153 Cal. Rptr. 3d 583 (Ct. App. 2013) .......... 8

*Sanchez v. Valencia Holding Co.*

979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

61 Cal. 4th 899 (2015) ........ 7

*Shearson/Am. Exp., Inc. v. McMahon*
482 U.S. 220 (1987) ........ 10

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*
6 Cal. 5th 59 (2018) ........ 8

*Shroyer v. New Cingular Wireless Servs., Inc.*
498 F.3d 976 (9th Cir. 2007) ........ 7

*SteppeChange LLC v. VEON Ltd.*
354 F. Supp. 3d 1033 (N.D. Cal. 2018) ........ 4

*Taylor v. Shutterfly, Inc.*
2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ........ 4

*Wisniewski v. Clary*
46 Cal. App. 3d 499 (Ct. App. 1975) ........ 9

*Wray v. Humble Bundle, Inc.*
824 F. Supp. 3d 868 (N.D. Cal. 2025) ........ 13

**Statutes**

9 U.S.C. § 2 ........ 13

Cal. Civ. Code § 1654 ........ 14

Cal. Civ. Code § 1670.5(a) ........ 8, 12

Cal. Civ. Code § 1751 ........ 14

Cal. Civ. Code § 1781 ........ 14

**Rules**

Cal. R. Ct. 3.855(a) ........ 9

Cal. R. Ct. 3.857(b) ........ 9

**Other Authorities**

ADR Servs. Arb. Rule 10 (eff. Oct. 7, 2024) ........ 6, 10

Cal. R. Prof. Conduct 4.2(a) ........ 8, 9

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

## INTRODUCTION

Uber portrays this as a routine motion—one involving a Plaintiff who agreed to individual arbitration and raises objections that are either for an arbitrator or lack merit. Uber's Terms of Use ("Terms") tell a different story. They establish an unusually complex scheme that does not truly bind Uber to arbitrate, yet burdens claimants at every stage—before filing, during threshold disputes, and inside the arbitral forum. The Ninth Circuit and courts in this District have refused to enforce agreements that function similarly.[1] Every concern those courts identified—open-ended delay, a trigger keyed to the claimant's choice of counsel, and an asymmetry burdening only consumers—is present here. Worse, statutes of limitations run during most of it. The Terms also allow Uber to abandon arbitration, *after* forcing claimants through these obstacles, if too many consumers file similar claims. So Uber can run out the clock, force claimants to start anew in court, and then assert the claims are untimely. It can also invoke its one-way indemnification provision to make claimants pay for "violating" Uber's vaguely defined "Mass Action Waiver." Claims are delayed or extinguished, and consumers are deterred from bringing them at all. The Terms also impermissibly bar public injunctive relief in any forum and contain many other one-sided provisions, reflecting a systematic tilt in Uber's favor, so severance is inappropriate. The Court should invalidate the Terms and deny Uber's motion to compel arbitration.

## FACTUAL BACKGROUND

Plaintiff alleges Uber charged him and millions of other Uber Eats users $1 to $5 per order for "priority" delivery, promising "direct to you" service it did not and could not provide. Compl. ¶¶ 24–26, 42. To hold Uber liable, a consumer faces the following hurdles, which go well beyond the requirements found in routine bilateral arbitration agreements:

*<u>Before filing</u>*. The consumer must mail Uber detailed written notice of intent to initiate an informal dispute resolution conference—though Uber may give notice by email. Terms § 2(d).

[1] *See, e.g.*, *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024); *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *5–8, *11 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) (mem.), *cert. denied*, No. 25-1008 (U.S. May 18, 2026); *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 990–92 (N.D. Cal. 2025); *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697 (N.D. Cal. Sept. 8, 2026).

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Conflictingly, § 7 requires consumers to dispute a charge in the app "within 30 days after the Charge occurred" or "waive [their] right to later dispute the amounts charged." *Id.* § 7.

*"Informal" personal "meet and confer*:" The consumer must attend an individual conference with Uber and, even if represented, "must also appear [] and fully participate." Terms § 2(d). Any demand filed before the conference is complete "shall" be dismissed. *Id.*

*Filing*. If the consumer "fully participate[s]" in the conference to Uber's satisfaction, he must serve his demand by mail and email, attach any litigation-funding agreement (or state that none exists), and waive privilege over anything shared with a funder. *Id.* §§ 2(d), 5. Signature and Rule 11-style requirements apply to the consumer's claims, but not to Uber. Terms § 2(d).[2]

*The Mass Action stay*. Uber may then assert, on scant or no evidence, that a demand is part of a "Mass Action," which is vaguely defined. *Id.* § 2(a)(3)(a)–(b). Once Uber, unbound by any Rule 11 obligations, raises such a challenge, "any further arbitration proceedings" are stayed while a three-arbitrator panel takes evidence and issues written findings, all on no deadline. *Id.* § 2(a)(3)(b). A demand already "processed as [an] individual arbitration" may be swept in retroactively by other consumers' later filings. *Id.* § 2(a)(3)(c)(iii).

*The post-hoc arbitration opt-out*. If the panel finds a Mass Action, Uber may cancel arbitration. *Id.* § 2(a)(3)(b). A consumer may opt out of a Mass Action too (at least in theory, although this option is largely illusory, as discussed below), but only by personally signed notice sent via Priority Mail or hand delivered; Uber need only notify counsel. *Id.*

*The Special Master*. If neither party opts out, Uber has 15 days to request a Special Master to resolve threshold disputes focused on issues only Uber would likely raise, including any alleged "violation[s] of these Terms." *Id.* § 2(a)(3)(c)(i)–(ii). Every demand, disputed or not, waits until the Special Master is done, who has "no authority to consolidate cases" and no deadline. *Id.*

*The hearing queue*. A surviving demand is sorted into a group of up to 100 before a single arbitrator, who decides each claim individually, in no prescribed order and on no schedule. *Id.*

---

[2] Uber fakes mutuality by having the Terms authorize an arbitrator to afford relief or impose sanctions "for either party's violation of th[e Rule 11] requirement." Terms § 2(d). But the requirement applies only to "you," *i.e.* consumers, so Uber could never violate it. Terms § 2(d). Plaintiff has no objection to Rule 11, but it should apply to both sides.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

§§ 2(a)(3)(c)(ii), 2(g). The consumer could be last in line. And even at this stage, the Terms preserve, without deadline or procedure, the right to object that a law firm's multiple filings violate "any term of this Agreement," *id.* § 2(a)(3)(c)(ii).

<u>*No tolling*</u>. At every stage after the individual conference—the panel and Mass Action stay, the Special Master proceedings, and the hearing queue—the Terms set no deadline while limitations periods for consumers run, letting Uber extinguish claims before any merits ruling. *Id.* § 2(a)(3)(b)–(c). And if an arbitrator dismisses a demand because the claimant did not "fully participate" in the conference, the claimant must start over, by which time the claims may be time-barred. *Id.* § 2(d).

Few consumers will navigate this costly and labyrinthine process, leaving Uber free to collect hundreds of millions in sham fees.

## ARGUMENT

Uber acknowledges that Plaintiff's challenges to the delegation clause and "any and all disputes concerning" the Mass Action and Class Action Waivers (the "Waivers") are reserved for the Court. Thus, the Court, not an arbitrator, must decide Plaintiff's challenges to the unfair process feeding into the Mass Action protocol (Part II.B.1); the Mass Action protocol itself (Part II.B.1), including the Special Master and grouping steps, which the Mass Action Waiver incorporates by barring mass proceedings "except as provided below in Section 2(a)(3)(c)," *id.* § 2(a)(3)(a); and the Class Action Waiver's bar on public injunctive relief and its enforceability under *Discover Bank* (Part II.B.2). Further, there is no clear or enforceable delegation clause (Part I.A and B.). So the Court should consider the Terms' many other one-sided provisions (Part II.B.3). Each of these defects independently forecloses severance; together, they leave no doubt the arbitration clause is permeated by unconscionability and cannot be saved. (Part III).

### I. The Delegation Clause is Not Enforceable.

#### A. The Terms do not clearly and unmistakably delegate arbitrability.

A delegation clause is enforceable only if it "clearly and unmistakably" assigns arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *6 (N.D. Cal. Sept. 30, 2023). The Terms do the opposite. They give the arbitrator "exclusive authority to resolve all threshold

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

arbitrability issues," including whether the Terms are "unconscionable," but carve out for courts "exclusive authority to resolve any and all disputes concerning" the Waivers, including whether those provisions are "unconscionable." Terms § 2(a)(4). In a carveout to the carveout, they then return to "an arbitrator or panel of arbitrators" the question of whether a party has violated the Mass Action Waiver. *Id.*; *see also* § 2(a)(3)(b). But that *is* a "dispute concerning" the waiver that was just committed "exclusive[ly]" to court. Terms §§ 2(a)(4), 2(a)(3)(b). Uber's use of "except that" and "however" does not cure the issue, because there is no way to tell what exactly is excepted.

Plaintiff does not contend that a coherent carveout, by itself, defeats delegation.[3] But the Terms layer overlapping delegations that conflict with the rest of the agreement and with each other. An agreement that "points in two directions" on who decides a given challenge does not clearly and unmistakably delegate it. *Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (2023); *Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192, at *1 (N.D. Cal. Nov. 18, 2025) ("[D]elegation isn't clear because of the contradictory nature of the provision").

Uber's own motion illustrates the lack of clarity here. Uber concedes the Court may resolve unconscionability challenges to the Waivers, yet artificially narrows what it deems as concerning the Waivers. Mot. 8–12. *All* of Plaintiff's unconscionability arguments are "disputes concerning the" Waivers, because they turn on how the Waivers and other interlocking provisions work together to delay and deter claims. The Ninth Circuit has emphasized that "[i]n evaluating an unconscionability challenge to a delegation provision . . . , a court must be able to interpret that provision in the context of the agreement as a whole." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023); *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 957 (C.D. Cal. 2023) ("[T]he unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms."); *see also* Cal. Civ. Code § 1670.5(a); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 (2000). Uber cannot evade that authority by splitting the unconscionability analysis into overlapping pieces and assigning them to different forums—a

[3] Uber's citations to *SteppeChange LLC v. VEON Ltd.,* 354 F. Supp. 3d 1033 (N.D. Cal. 2018); *Aggarwal v. Coinbase, Inc.,* 685 F. Supp. 3d 867, 878–79 (N.D. Cal. 2023), and *Taylor v. Shutterfly, Inc.,* 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018), which simply hold that a carve-out for certain types of claims does not automatically defeat delegation, are thus inapposite. Mot. 7.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

structural disadvantage that inures entirely to Uber's benefit. There is no coherent way to resolve Uber's conflicting terms on delegation, much less a clear and unmistakable one. It is also unfair for Uber to preserve fast-track access to courts for the issues that matter most to Uber, while other issues are consigned to a lengthy pre-dispute process and then arbitration.

Uber's authorities neither confronted this combination of defects nor condoned splitting review of interrelated provisions between courts and arbitrators. Mot. 6–7. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022), and *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024), did not consider any carve-out. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016), considered a single carve-out assigning waiver validity to courts—with no overlapping grants of authority or conflicting "only exceptions" clause.[4] The nonbinding state court decisions Uber cites (but did not submit) also did not address these issues.[5]

**B. The delegation clause is independently unconscionable.**

Even a clear delegation clause is unenforceable if it is unconscionable. *Rent-A-Center*, 561 U.S. at 74. To make such a showing, a party may rely on arguments made against the agreement as a whole if it explains how they apply to the delegation. *Bielski*, 87 F.4th at 1012.

*Pandolfi v. AviaGames, Inc.*, which held that provisions delaying "resolution of the gateway issue of whether a claim is arbitrable in the first instance" render the delegation itself unconscionable, is directly on point here. 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024). Uber's claim-deterring machinery operates directly on the delegated questions. As discussed above, before an arbitrator can rule on any threshold question, a claimant must (1) send a detailed notice of claim

[4] *Compare id*. (finding clear carve-out for "any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable") with Uber's far broader "any and all disputes concerning" and "including but not limited to" language here. Terms § 2(a)(4).

[5] Plaintiff is submitting these decisions as Exhibits A, B, and C to the Janove Declaration. It appears the state courts were not presented with most of the arguments Plaintiff raises here. They also did not follow *Pandolfi*, *Rios*, *O'Malley*, or *MacClelland*, decisions from courts in this District that invalidated arbitration clauses with similarly unconscionable terms. The *Almond* decision mentioned these authorities only to assert that "the facts in *Pandolfi* are distinguishable from those presented here," and to dismiss *Rios* and *MacClelland* as "not binding"—tacitly acknowledging that there is no principled way to distinguish them. Janove Decl. Ex. A (Almond) at 17:4–5, n.3. The state court decisions also addressed different agreements, at least one of which was "not a consumer contract of adhesion, and it contain[ed] an opt-out provision." Ex. A (Almond) at 10:4.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

in hard copy to Uber's legal department; (2) "personally" join a "meet and confer" with Uber and "fully participate;" (3) commence arbitration with specific hard copy and signature requirements; and (4) send Uber a copy of any litigation-funding agreement and waive privilege over any materials shared with a funder—a disclosure that cannot be undone, Terms § 5 (the privilege waiver is hidden in a Section titled "Accessing the Services").

Uber can further stall the process just by asserting that any claim is part of a Mass Action. If it does so before an arbitrator is appointed, all proceedings are stayed pending a three-arbitrator panel's ruling, *id.* § 2(a)(3)(b), and then possibly a Special Master's resolution of "threshold disputes," *id.* § 2(a)(3)(c)(i), before any arbitrator reaches the delegated questions. Tellingly, the issues that matter most to Uber (the Waivers) go straight to court. *See Peters v. Guaranteed Rate, Inc.*, 2025 WL 1904424, at *2 (9th Cir. July 10, 2025) ("The Agreement's structure reinforces its one-sidedness by mostly carving out exemptions to arbitration for claims likely to be brought by GRI, rather than Peters.").

Every step described above stands between a claimant and a ruling on arbitrability. And there is no tolling throughout much of this process. So "[c]laimants may find themselves wholly unable to vindicate their claims" or raise unconscionability challenges, "by operation of the . . . ambiguous, subjective, and asymmetrical tolling provisions." *See Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 993 (N.D. Cal. 2025). *Rios* held a comparable scheme substantively unconscionable because it created a "continued risk that [defendant] will seek to defeat claims as untimely after prolonged delays." 807 F. Supp. 3d at 993. Although *Rios* did not address a delegation clause, its reasoning applies equally here: Uber can contest compliance with multiple pre-dispute steps while limitations periods run.

Uber's ADR Services Rule 10 argument fails. Mot. 11. Rule 10 governs a single threshold arbitrator (here, the Special Master), not the panel, which operates "[n]otwithstanding" provider rules. Terms § 2(a)(3)(b), (c)(i); ADR Servs. Arb. R. 10(B)–(C) (eff. Oct. 7, 2024). Where it applies, Rule 10 adds delay: ADR Services may suspend disputed demands and withhold an arbitrator until every threshold issue is resolved, with no deadline. ADR Servs. Arb. R. 10(B), (E).

The delegation clause is also procedurally unconscionable. It appears in an adhesive form

with no opt-out, *see* Part II.A, and its scope cannot be discerned from its face, *see* Part I.A. "[A] layperson would be surprised to find that the delegation clause is subject to the batching provision." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025). Nor would a claimant expect that "the identity of their yet-unknown attorneys" could block a ruling on arbitrability. *Rios*, 807 F. Supp. 3d at 986.

**II. The Arbitration Agreement Is Unconscionable.**

**A. The agreement is procedurally unconscionable.**

Because the Terms are adhesive, they are at least minimally procedurally unconscionable. *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492–94 (2024); *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 915 (2015). Plaintiff could not negotiate the Terms, use the app without accepting them, or decline disputed Terms—unlike parties with an upfront opt-out as in *Mohamed*, 848 F.3d at 1211. The Terms also carry hallmarks of surprise, with Uber able to modify them "at any time, effective upon posting," including retroactively. Terms §§ 1, 2(a)(1); *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 682–83 (9th Cir. 2024); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003). And as in *Heckman*, the provisions are so dense and contradictory that no consumer could anticipate how they operate—for instance, that strangers' later filings can sweep an individual claim into the Mass Action process. Terms § 2(a)(3)(a), (c)(iii).

Uber's reliance on competitors like DoorDash and Grubhub also fails. Market alternatives do not negate an adhesion contract's procedural unconscionability. *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697, at *5 (N.D. Cal Sept. 8, 2026); *Gerber v. Twitter, Inc.*, 2024 WL 5173313, at *6 (N.D. Cal. Dec. 18, 2024) ("meaningful choice" rationale applies only where there surprise is not an issue); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 985 (9th Cir. 2007); *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (2021); *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 583 (2007). And those competitors' offerings differ. They also impose their own arbitration agreements and class waivers.

**B. The agreement is substantively unconscionable and unenforceable.**

"Plaintiffs may challenge the arbitration agreement on the basis that, at formation, it contained unconscionable provisions, even if those provisions were not later applied in an unfair

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

manner to Plaintiffs." *O'Malley*, 2026 WL 2640697, at *5. "'Substantive unconscionability examines the fairness of a contract's terms,' and the 'paramount consideration is mutuality.'" *Parsons v. Ukiah Valley Hosp*., 2026 WL 616495, at *2 (N.D. Cal. Mar. 4, 2026) (Donato, J.) (quoting *Ronderos v. USF Reddaway, Inc*., 114 F.4th 1080, 1094 (9th Cir. 2024)). Uber's agreement is riddled with asymmetrical provisions that "create unfair or one-sided results." *Pandolfi*, 2025 WL 2463742, at *1; *see also Heckman*, 120 F.4th at 686 (finding unconscionable a mutual right to appeal "functionally reserved for Defendants"). Because unconscionability is assessed as of "the time [the contract] was made," the question is what these provisions permit, not how Uber says it will use them. Cal. Civ. Code § 1670.5(a); *Ramirez*, 16 Cal. 5th at 506.

1. <u>Uber's pre-arbitration requirements delay and deter claims.</u>

The Terms impose substantial burdens on consumers who seek to initiate claims and almost none on Uber. Consumers must use mail; Uber may use email. Terms § 2(d). A claimant must appear personally, with no exception for hardship, disability, or work schedule, while Uber can send any low-level employee. *Id.* And while a consumer's premature demand "shall" be dismissed, nothing happens if Uber fails to hold the conference within the required 60 days. *Id.* Uber now says counsel can "fully participate" for the claimant, Mot. 14, but the text forecloses that reading. It permits counsel to participate, but then requires that "the party must *also* appear at and *fully participate* in the conference." Terms § 2(d) (emphasis added). If counsel's participation sufficed, "also appear at and fully participate" would add nothing. The Terms thus invite communications with represented parties that Cal. R. Prof. Conduct 4.2(a) forbids.[6]

Uber's analogy to *Bielski* fails. Mot. 13–14. *Bielski* did not address the rights of represented claimants, and Coinbase's process—conducted through customer service agents, not the legal department—imposed meaningful reciprocal obligations which Uber lacks here: within fifteen business days, Coinbase had to give the consumer what they asked for, reject the claim with reasons, or propose an alternative resolution. 87 F.4th at 1014. *Bielski* thus found a "low level" of

[6] Rule 4.2(a) bars communications with a represented person about the subject of the representation, including indirect communications where content "originates with or is directed by the attorney." *S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 153 Cal. Rptr. 3d 583, 602 (Ct. App. 2013). This provision is therefore "contrary to the public policy of this state and . . . unenforceable." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 74 (2018).

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

unconscionability, tolerable only absent other indicia of unfairness. *Id*. at 1015. Here, they abound.

Nor does Uber's "personal[] meet and confer" resemble court-ordered settlement conferences, which occur within pending proceedings, not as barriers to them, and are overseen by impartial judges or mediators. Cal. R. Ct. 3.855(a), 3.857(b). Parties attend to communicate with *the mediator*, not their adversary. Uber's conference has no neutral and a mandatory consequence: dismissal. Terms § 2(d). It is an obstacle to adjudication, not an invitation to settle. Uber mistakenly relies on *Wisniewski v. Clary*, 46 Cal. App. 3d 499, 503 (Ct. App. 1975). But that case involved a court-ordered settlement conference and did not address Rule 4.2, nor approve any mandatory meeting between represented parties and opposing counsel, unsupervised by any neutral.

2. <u>The Mass Action protocol is unconscionable.</u>

Courts in this District have repeatedly held similar mass action protocols unconscionable. *O'Malley*, 2026 WL 2640697 at *7–8; *Pandolfi*, 2024 WL 4051754, at *5–8, *11; *Rios*, 807 F. Supp. 3d at 990–92. As Judge Lin explained, such procedures "come in different flavors," but are unreasonably one-sided where they present (1) "an inherent risk of extreme delays" and an attendant chilling effect; (2) interference with "the right to counsel of [claimants'] choice"; and (3) "built-in asymmetry." *O'Malley*, 2026 WL 2640697 at *7. Each appears on the Terms' face.

*a. Extreme, open-ended delay.*

The Terms produce the exact dynamic courts in this District have condemned: "any delay in one arbitration halts progress for all remaining claimants." *Rios*, 807 F. Supp. 3d at 990; *O'Malley*, 2026 WL 2640697 at *7. A single Mass Action assertion stays every affected claim until the panel rules; a single Special Master dispute delays every claim, disputed or not; and each claim waits in a queue of up to 100 before one arbitrator, unbound by other rulings—all with no deadline. Terms §§ 2(a)(3)(b)–(c), 2(g). No group can begin until any fee-dispute panel finishes. *Id.* § 2(h). Even then, the Terms preserve, without deadline or procedure, the right to object that multiple filings violate "any term of this Agreement," *id.* § 2(a)(3)(c)(ii). That claims are nominally "filed" means nothing if one cannot get a merits hearing. This "'prospect of delay' itself may have a 'chilling effect on claimants, deterring them from vindicating their rights.'" *Rios*, 807 F. Supp. 3d at 990.

Uber's responses are unpersuasive. The panel's inquiry is hardly "narrow." Mot. 12. It must

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

determine how many demands were filed, when, by which "collection of law firms," whether the demands are "substantially similar," and what other filings fall within the open-ended definition (discussed below)—all with briefing, evidence, and deliberation by three arbitrators. New filings can restart the process. Terms § 2(a)(3)(c)(iii). ADR Services' general rules cannot cure any of this. *See Pandolfi*, 2024 WL 4051754, at *8 (general provider rules do not override specific mass-arbitration provisions). Nor is the delay "speculative" under *Green Tree*. Mot. 12. It is mandatory and immediate; only its duration is uncertain. And *Green Tree* is inapposite where, as here, "the arbitration agreement . . . is not silent on the contested matter." *Pandolfi*, 2024 WL 4051754, at *7. Uber's citation to *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) likewise misses the point. Mot. 14–15. Even a competent Special Master faces potentially thousands of claims, no power to consolidate, and no deadline. Terms § 2(a)(3)(c)(i). And because tolling ends with the conference, claims may expire while proceedings stall. *Id.* § 2(c)–(d); Compl. ¶ 95. Nor is equitable tolling a reliable backstop: *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019), Uber's FTCA case *denied* tolling under a demanding standard, and Uber's tepid assurance that it "would likely voluntarily toll" limitations, Mot. 12, underscores that the Terms provide no such protection.

*b. Ambiguous trigger and interference with chosen counsel.*

The Terms ambiguously define Mass Action as "includ[ing], but [] not limited to" cases in which a party's lawyers have filed 50 or more "substantially similar" demands within 180 days. Terms § 2(a)(3)(a). Nothing limits what else qualifies; Uber could argue that similar claims through different counsel, or by unrepresented consumers, are Mass Actions. Even the 50-demand example is indeterminate: the Terms do not define "collection of law firms" or "substantially similar," or say whether the 180-day window runs backward, forward, or both. It also turns on counsel's conduct, not the claimant's—fifty consumers independently retaining the same firm are swept in. *O'Malley* explained why this is unconscionable. Because small consumer claims are economical only in volume, a counsel-based trigger means a firm cannot represent many clients "without subjecting them to potentially lengthy delays." 2026 WL 2640697, at *8. "In turn, consumers would have fewer lawyers to choose from, and would plausibly be chilled from advancing their claims." *Id.*; *accord Pandolfi*, 2024 WL 4051754, at *11.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

*c. Built-in asymmetry.*

That the Mass Action Waiver nominally applies to "you or Uber" does not save it: in operation, the waiver has "a built-in asymmetry" where "it is far from clear that [the drafter] would ever have claims that would trigger the provision." *Pandolfi*, 2024 WL 4051754, at *7; *O'Malley*, 2026 WL 2640697 at *7. Uber's claims against consumers—a cleaning fee, a disputed fare—are individual; it has no reason to file 50 similar demands within 180 days, so the protocol responds to a threat only Uber faces. As Uber's own authority noted, "[i]t is inconceivable that Uber would file a mass action against its customers." Ex. B (*Mafaher*), at 8.

*d. Neither the neutral panel nor the back end opt-out cures the defects.*

Uber stresses that a neutral panel decides whether the Waiver was violated. Mot. 9. But the panel must apply the open-ended definition Uber wrote, and Uber can trigger the procedure (and its automatic, indefinite stay) before any neutral decides whether it applies.

Uber's opt-out cases are inapposite. Mot. 11. The agreements in *Burkhardt* and *Jenkins* had upfront opt-outs. *Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *4–6 (E.D. Cal. July 31, 2025); *Jenkins v. PetSmart, LLC*, 2023 WL 8548677, at *13–14 (E.D. Pa. Dec. 11, 2023). *Burkhardt*'s mass-action definition was also far more definite; and *Jenkins* applied Pennsylvania law without reaching substantive unconscionability. *Id.* The Terms' so-called "opt-out" is not the kind courts have credited in assessing unconscionability, which lets a consumer decline arbitration without penalty before any dispute arises. It is available only after a consumer overcomes a maze of procedural hurdles and an arbitral panel finds a party "has violated the Mass Action Waiver." Terms § 2(a)(3)(b). In practice, only consumers file mass demands, so only consumers can be found in violation, which is potentially costly: it brands the consumer a breaching party, exposing him to indemnification of Uber's costs and attorneys' fees. *Id.* § 8.

Far from curing unconscionability, this conditional exit compounds it. Uber chooses its forum only after it sees how many claims it faces. If consumers arrive in numbers, Uber can litigate the Mass Action questions, obtain a finding of violation, and then abandon the arbitration it designed and imposed, while shifting its fees and costs onto consumers. Terms § 2(a)(3)(b). For consumers, the potentially costly opt-out arrives only *after* clearing the pre-filing conference, the Mass Action

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

stay, and an open-ended panel proceeding. *Id.* §§ 2(a)(3)(b), 2(d). Limitations periods are tolled only during the informal conference, *id.* § 2(d), not during the following panel proceeding, so a claimant who exits must refile in court after months or years of delay, still supposedly bound by the Class Action Waiver, *id.* § 2(a)(2), and facing a likely timeliness defense from Uber. An exit that opens only after a finding of breach and significant delay, into a forum still stripped of collective relief, is not a safety valve. It is one more tool to delay and impede claims.

*e. Plaintiff Has Standing to Challenge the Mass Action Protocol.*

Uber argues that its Mass Action Waiver is "irrelevant" to Plaintiff. Mot. 9–10. But unconscionability is assessed at formation, and a provision that chills claims is unconscionable, whether or not invoked. *Pandolfi*, 2024 WL 4051754, at *5 (applying *Ramirez*); Cal. Civ. Code § 1670.5(a); *see also Gardner v. AMN Healthcare Servs., Inc.*, 2025 WL 3751929, at *2 (N.D. Cal. Dec. 29, 2025). *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021), is not to the contrary. Its "hypothetical issues" caution was dicta that "does not appear to be good law anymore" after *Ramirez*. *O'Malley*, 2026 WL 2640697, at *5.

Further, the Waiver poses a concrete and present threat to Plaintiff. Uber's vague and open-ended "Mass Action" definition could readily encompass his claim. He challenges a company-wide policy, and his counsel has already been contacted by more than 50 individuals seeking to pursue similar claims. Janove Decl. ¶ 4; *see Pandolfi*, 2024 WL 4051754, at *6 (claims challenging company-wide policies "will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small"). Uber's litigation concession that this case is not a Mass Action, Mot. 9, "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1004 (9th Cir. 2021); *Peters v. Guaranteed Rate, Inc.*, 2024 WL 2925309, at *1 (N.D. Cal. June 10, 2024) (rejecting attempt to "simply agree[] in litigation not to enforce" unconscionable terms).

Uber's one-sided indemnity provision sharpens the threat. It requires consumers to indemnify Uber for "any and all" costs, "including attorneys' fees," arising from any "breach or violation of any of these Terms." Terms § 8. So if a panel found a claimant breached the Mass Action Waiver—because, say, his attorney filed too many similar demands—Uber could seek its

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

fees and costs as damages. *Id.* § 2(a)(3)(b). The risk of uncapped fee liability is thus a *present* deterrent to arbitration.

3. <u>The FAA does not save Uber's dispute resolution protocol.</u>

Uber's Terms share the defining features condemned in *Heckman*, which held the FAA "simply does not apply to and protect" a mass-arbitration model that materially departs from bilateral arbitration. 120 F.4th at 689. Uber stresses the absence of a bellwether procedure. Mot. 4–5. But *Heckman* condemned interlocking procedures departing from arbitral norms and purposes, not any single feature. Uber's Terms achieve the same result through different mechanics.

Uber's cases are not to the contrary; none examined procedures like Uber's. For instance, in *Jones v. Starz Entertainment, LLC*, JAMS consolidated arbitrations under its own rules, with no one-sided pre-dispute process, no bespoke challenge procedure creating untolled delay, and no mechanism to cancel arbitration midway through. 129 F.4th 1176, 1179, 1182-83 (9th Cir. 2025).[7]

Relatedly, Uber's Terms are not a "written provision . . . to settle by arbitration a controversy." 9 U.S.C. § 2. They route consumers through procedural hurdles before an arbitration provider but usually do not bind Uber to settle anything there. A labyrinthine pre-dispute procedure plus a mass-filing process that lets Uber return everything to court at its option "'sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.'" *Heckman*, 120 F.4th at 690 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348–49 (2011)).

4. <u>The Class Action Waiver is unenforceable.</u>

*a. The Class Action Waiver unlawfully bars public injunctive relief.*

Uber's waiver of the right to seek public injunctive relief—"[t]he parties [] expressly waive the right to seek, recover, or obtain any non-individual relief"—Terms §§ 2(a)(2), 2(a)(3)(a), is

[7] The same is true of *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024), and *Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157 (N.D. Cal. Oct. 24, 2025). In *Kohler*, claimants argued unconscionability "principally due to one section . . . the Batch Arbitration Provision," with no showing how the "Batch Arbitration Provision would result in delay." *Id.* at 1128–29. In *Davis*, the agreement did "not impose any limit on the number of arbitrations that may proceed at one time or on the number of claimants per attorney." *Davis*, 2025 WL 2998157, at *5. And in *Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868 (N.D. Cal. 2025) "Plaintiffs ha[d] not made any arguments about how the mass filing procedures render the delegation of gateway issues unconscionable." *Id.* at 880.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

unenforceable under the *McGill* rule, which the FAA does not preempt. *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961-63 (2017); *McBurnie v. RAC Acceptance E., LLC*, 95 F.4th 1188, 1193 (9th Cir. 2024).[8] Thus, independent of Plaintiff's other challenges, his public injunctive relief claims cannot be compelled to arbitration, nor should they be stayed. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 831 (9th Cir. 2019). Plaintiff seeks paradigmatic public injunctive relief: an injunction against Uber's "direct to you" advertising to the general public. Compl. ¶¶ 170, 180–183, 192–194, 203–206; *see Hodges*, 21 F.4th at 542 (false-advertising injunction is paradigmatic public relief).

*b. The Class Action Waiver is unconscionable under California law.*

Under *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005), Uber's class action waiver is unconscionable because it appears in an adhesive consumer contract and Plaintiff alleges that Uber, the stronger party, cheated large numbers of consumers out of individually small sums. The CLRA also guarantees a right to bring a class action, Cal. Civ. Code § 1781, declaring any waiver "contrary to public policy" and "unenforceable and void," *id.* § 1751. *Concepcion*, 563 U.S. at 344–52, does not save Uber's waiver; it preempted *Discover Bank* only insofar as it obstructs bilateral arbitration. But the Class Action Waiver reaches beyond arbitration, purporting to remain in effect even if "for any reason a claim does not proceed in arbitration." Terms § 2(a)(2). In court, the FAA cannot preempt *Discover Bank* or the CLRA.

5. <u>The Terms' remaining one-sided provisions confirm a systematic effort to prevent consumers from vindicating their rights.</u>

The intellectual-property carve-out exempts from arbitration the claims only Uber would bring. Terms § 2(b). Uber disclaims liability for consequential damages and anything related to deliveries. *Id.* § 8. Only Uber's failure to enforce any dispute-resolution term is protected from waiver, with no reciprocal protection for claimants. *Id.* § 9. Rule 11-style requirements bind only the consumer. *Id.* § 2(d). The offer-of-judgment provision shifts costs to consumers in small-dollar disputes, including arbitrator's fees and other costs not incurred in court. *Id.* § 2(f). Section 7's in-

[8] Section 2(g) does not cure the defect. An arbitrator's theoretical power to award relief the claimant is barred from requesting preserves nothing. Nor is that power clear: the Waivers deny any arbitrator "any authority . . . to award relief to anyone but the individual in arbitration." *Id.* §§ 2(a)(2), 2(a)(3)(a). At best, the Terms contradict themselves on whether public injunctive relief survives, and that ambiguity is construed against Uber. Cal. Civ. Code § 1654.

JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 115 Broadway, 5th Fl. New York, NY 10006 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

app dispute requirement imposes a one-sided 30-day limitations period on the very claims Plaintiff brings. *Id.* § 7. Uber, on the other hand, may "adjust Charges for any or all services or goods obtained through the use of the Services at any time." *Id.* And the funding-disclosure and privilege-waiver requirements serve only to deter the pursuit of claims against Uber. *Id.* § 5.

**III. The Foregoing Defects Weigh Decisively Against Severance.**

Severance is discretionary and inappropriate where it would "condone an illegal scheme" or where the defects show "a systematic effort to impose arbitration . . . to secure a forum that works to the stronger party's advantage." *Ramirez*, 16 Cal. 5th at 513–17 (cleaned up); *Armendariz*, 24 Cal. 4th at 124. The "overarching inquiry is whether the interests of justice would be furthered by severance." *Id.* (cleaned up). Courts must also consider deterrence, since routine severance rewards overreaching drafters. *Ramirez*, 16 Cal. 5th at 517.

Here, the number and character of the Terms' defects reveal a systematic effort to tilt the forum in Uber's favor. *Armendariz*, 24 Cal. 4th at 124. *O'Malley* refused to sever because doing so "would condone the unconscionable scheme and incentivize keeping the Terms the same in case future claimants are chilled from bringing claims or do not challenge this provision." 2026 WL 2640697, at *9; *see also Rios*, 807 F. Supp. 3d at 994; *Pandolfi*, 2024 WL 4051754, at *13. That reasoning applies with even greater force here. Uber's Waivers, Dispute Procedure, Special Master and grouping procedures, and delegation clause are structurally intertwined: the delegation's carve-outs are defined by the Waivers, and the Dispute Procedure controls access to the arbitrator who would decide the delegated questions. Combined with the unlawful public-injunction waiver, the coercive conference, the limitations traps, the forced privilege waiver, and the remaining one-sided provisions, the Term's central purpose is plain: to delay and impede consumer claims. Because "the effects of these unconscionable provisions were 'entirely foreseeable and intended,'" severance is unwarranted. *Heckman*, 120 F.4th at 688 (affirming refusal to sever). Curing these defects would require rewriting the agreement, which the Court may not do. *Ramirez*, 16 Cal. 5th at 502–03. As in *O'Malley*, the "agreement indicates a view that, when there are a significant number of similar claims, [Uber] would rather be in court than arbitrate if it cannot take advantage of the unconscionable mass arbitration procedures." 2026 WL 2640697, at *9.

979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**CONCLUSION**

The Court should deny Uber's Motion to Compel Arbitration and Stay Proceedings.

DATED: October 23, 2026

Respectfully submitted,

By: /s/ Raphael Janove
Raphael Janove

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940

Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

Elizabeth Aniskevich (admitted *pro hac vice*)
eaniskevich@singletonschreiber.com
Jennifer Yadoo (admitted *pro hac vice*)
jyadoo@singletonschreiber.com
Ryan Crosswell (admitted *pro hac vice*)
rcrosswell@singletonschreiber.com
**SINGLETON SCHREIBER, LLP**
650 Massachusetts Ave. NW, Suite 600
Washington, DC 20001
Telephone: (619) 771-3473

Anna Haac (admitted *pro hac vice*)
anna@haaclaw.com
**HAAC LAW, LLC**
11810 Grand Park Ave., Suite 500
North Bethesda, MD 20852
Telephone: (240) 389-0199

***Attorneys for Plaintiff and Proposed Classes***