**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN CA 313138)
SHarutyunyan@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

**JENNER & BLOCK LLP**
Adam G. Unikowsky (*pro hac vice pending*)
AUnikowsky@jenner.com
1099 New York Ave NW
Washington, DC 20001
Telephone: 202 639-6000
Facsimile: 202 639-6066

*Attorneys for Defendant*
*Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASSAN WRIGHT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:26-cv-07753-JD<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: December 10, 2026<br>Time: 11:00 a.m.<br>Courtroom: 11<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

INTRODUCTION....1

ARGUMENT....1

I. The Delegation Agreement Is Enforceable. ....1

A. The Delegation Agreement Is Clear and Unmistakable. ....1

B. The Delegation Agreement Is Not Unconscionable....3

II. The Mass Action Waiver Is Enforceable, and the Grouping Provision Is for the Arbitrator....4

A. The Mass Action Waiver Does Not Apply to Plaintiff. ....4

B. Neither the Grouping Provision Nor the Mass Action Waiver Is Unconscionable. ....5

III. The Class Action Waiver Is Enforceable....7

IV. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable....8

A. The Arbitration Agreement Is Not Procedurally Unconscionable. ....8

B. The Pre-Arbitration Conference Requirement Is Not Unconscionable. ....8

C. Plaintiff's Miscellaneous Attacks Are Meritless....9

V. Severance Is the Remedy for Any Unenforceable Provision....10

CONCLUSION....10

## TABLE OF AUTHORITIES

### CASES

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)....................6, 7

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023)....................9

*Booth v. United States*, 914 F.3d 1199 (9th Cir. 2019)....................9

*Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th Cir. 2026)....................5

*Gardner v. AMN Healthcare Services, Inc.*, 2025 WL 3751929 (N.D. Cal. Dec. 29, 2025)....................4

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025)....................7

*Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021)....................4, 8

*Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023)....................3

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....................7

*Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023)....................2

*Jones v. Starz Entertainment, LLC*, 129 F.4th 1176 (9th Cir. 2025)....................6

*Mitton v. State Bar of California*, 455 P.2d 753 (Cal. 1969)....................9

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016)....................1, 2, 3

*O'Malley v. Williams-Sonoma, Inc.*, __ F. Supp. 3d __, 2026 WL 2640697 (N.D. Cal. Sept. 8, 2026)....................4, 6, 8, 10

*Pandolfi v. AviaGames*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), *cert. denied*, 146 S. Ct. 2657 (2026)....................3, 4, 6

*Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192 (N.D. Cal. Nov. 18, 2025), *appeal docketed*, No. 25-7725 (9th Cir. Dec. 9, 2025)....................2

*Ramirez v. Charter Communications, Inc.*, 551 P.3d 520 (Cal. 2024)....................4, 10

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)....................2

*Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025), *appeal docketed*, No. 25-7199 (9th Cir. Nov. 14, 2025)....................4, 6

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.*, 425 P.3d 1 (Cal. 2018)....................9

*Smith v. Spizzirri*, 601 U.S. 472 (2024)....................7

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016)....................7

**STATUTES**

9 U.S.C. § 3....................7

**OTHER AUTHORITIES**

Cal. R. Prof. Conduct 1.2(a)....................5

Cal. R. Prof. Conduct 1.7(b)....................5

Cal. R. Prof. Conduct 4.2....................9

Order, *Pandolfi v. AviaGames*, No. 23-cv-05971 (N.D. Cal. May 21, 2024), Dkt. 113....................4

## INTRODUCTION

The Court should enforce Uber's Arbitration Agreement. The bulk of Plaintiff's arguments contend that the Arbitration Agreement is invalid as a whole. But the Arbitration Agreement contains a Delegation Agreement that will give Plaintiff a fair opportunity to raise all of those arguments to the arbitrator.

The limited question before the Court is whether the Delegation Agreement, as well as the Mass Action Waiver and Class Action Waiver ("the Waivers"), are enforceable. They are. The Delegation Agreement is a standard provision of the sort that is routinely enforced. Plaintiff's objections to the Mass Action Waiver are irrelevant to Plaintiff and, even as to non-parties, rest upon a speculative chain of contingencies. Plaintiff's objections to the Class Action Waiver conflict with well-settled law. The Court should resolve those narrow questions in Uber's favor, enforce the Arbitration Agreement, and allow the arbitrator to resolve the issues Plaintiff now raises. Even setting aside the Delegation Agreement, the Arbitration Agreement is fair. To arbitrate, all Plaintiff must do is notify Uber of his dispute in writing, participate in an informal conference, and—if the conference does not resolve the dispute—file an arbitration demand. The Court should grant Uber's motion to compel arbitration and stay these proceedings (Dkt. 25, "Mot.").

## ARGUMENT

### I. The Delegation Agreement Is Enforceable.

#### A. The Delegation Agreement Is Clear and Unmistakable.

Uber's Delegation Agreement reserves disputes over the Class Action Waiver and Mass Action Waiver for the Court, and unambiguously delegates other enforceability disputes to the arbitrator. Mot. at 5–7. Plaintiff's efforts to gin up ambiguity—to the end of showing that the Delegation Agreement should not be enforced at all—are unpersuasive.

The Mass Action Waiver carveout is not ambiguous. The Court considers challenges to the Mass Action Waiver itself, while an arbitrator considers whether the Mass Action Waiver applies (*i.e.*, whether a Mass Action exists). The Delegation Agreement says so clearly: "[A]n arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver." Terms § 2(a)(4). Plaintiff labels this a "carveout to the carveout," Opp. at 4, but such a division of authority between the court and arbitrator is commonplace. Mot. at 6–7; *see Mohamed v. Uber Techs.,*

*Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (any ostensible conflict created by a clause introducing exceptions was "artificial").

Plaintiff insists that *all* of his unconscionability arguments are "disputes concerning" the Waivers because the Waivers "work together" with other provisions, and hence fall outside the Delegation Agreement. Opp. at 4. But the bulk of Plaintiff's challenges to the Arbitration Agreement have nothing to do with the Waivers. For instance, the grouping provision in Section 2(a)(3)(c) applies only if neither party enforces the Mass Action Waiver, so it cannot possibly "concern" the Mass Action Waiver. *Infra* Section II. The same is true for Plaintiff's challenges to other provisions such as the pre-hearing conference requirement: those provisions are unrelated to the Mass Action Waiver and Plaintiff cannot smuggle his challenge to those provisions into this Court.

Plaintiff's effort to distinguish *Mohamed* fails. There, the Ninth Circuit enforced a delegation clause in Uber's Terms that—much like the Delegation Agreement here—reserved for the court "any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable," while sending all other arbitrability questions to the arbitrator. 848 F.3d at 1208–09. That delegation clause thus reached three carveouts, contrary to Plaintiff's characterization of it as containing a "single carve-out." Opp. at 5. And Supreme Court precedent forecloses Plaintiff's complaint that there is something improper about "splitting the unconscionability analysis" between forums. *Id.* at 4. Under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), when plaintiffs challenge delegation clauses, the unconscionability challenge is divided between court and arbitrator: the court considers the delegation clause, and the arbitrator considers the arbitration agreement as a whole. *Id.* at 71–72. The Delegation Agreement here works the exact same way except the Court may hear challenges to two additional provisions: the Class Action Waiver and Mass Action Waiver. Plaintiff's cases, by contrast, involved agreements that pointed in two different directions on the *same* question, not a division of authority between court and arbitrator. *See Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (2023) (delegation clause was contradicted by a separate "poison pill" provision permitting a court to address enforceability of individualized arbitration); *Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192, at *1 (N.D. Cal. Nov. 18, 2025) (delegation clause was contradicted by a separate provision requiring parties' consent to court jurisdiction for actions relating to the arbitration agreement).

**B. <u>The Delegation Agreement Is Not Unconscionable.</u>**

A challenge to a delegation clause must focus on the *validity of the delegation clause* specifically, and a party relying on other provisions must "explain[] how 'unrelated' provisions make the delegation unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). By that standard, most of Plaintiff's arguments—about the notice requirement, the informal conference, the formalities of serving a demand, and the litigation-funding disclosure, Opp. at 5–6—are challenges to the Arbitration Agreement as a whole. None concerns *who decides* arbitrability.

Plaintiff's only delegation-specific theory is that the Mass Action procedures might delay the arbitrator's decision of arbitrability questions pursuant to the Delegation Agreement. That theory is irrelevant here because there is no Mass Action. Even if it were relevant and had merit, the remedy would be to sever the Mass Action provisions—a remedy that would have no effect on Plaintiff's case—not to discard the Delegation Agreement. *See Mohamed*, 848 F.3d at 1213–14; Mot. at 9–10.

*Pandolfi v. AviaGames*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), does not hold otherwise. The delegation clause there was "subject to the batching provision," 2025 WL 2463742, at *1, for two reasons that do not apply here. First, batching was certain to govern the *Pandolfi* plaintiffs' own gateway disputes because their counsel "represent[ed] more than 4,100 individuals" asserting the same claims, 2024 WL 4051754, at *6, as opposed to being merely "contacted by" individuals, Janove Decl. ¶ 4 (Dkt. 30). Plaintiff is one individual who has not filed, and does not allege that he will file, a Mass Action. Second, the *Pandolfi* provision allowed only twenty cases to proceed at a time, so every claimant behind the first batch would wait for a ruling on arbitrability. 2024 WL 4051754, at *6. Uber's grouping provision contains no sequential batching, *infra* Section II.B, and Uber's Delegation Agreement allows the arbitrator to resolve any challenge to the grouping provision should one arise.

Nor is the Delegation Agreement procedurally unconscionable. The first page of Uber's Terms says—in prominent, capitalized text flagged as "IMPORTANT"—that the Terms contain an arbitration agreement and that it "REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION." Terms at 1. The Delegation Agreement itself is a separately numbered provision

marked by an underlined subheading—"(4) Delegation Agreement"—and set out in bolded text. Terms § 2(a)(4); *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697, at *5 (N.D. Cal. Sept. 8, 2026) (similar preamble precluded high degree of procedural unconscionability). That is nothing like the "barely readable" delegation clause in *Pandolfi*. Order at 12–13, *Pandolfi*, No. 23-cv-05971 (N.D. Cal. May 21, 2024), Dkt. 113; *Pandolfi*, 2024 WL 4051754, at *2 (incorporating this analysis).

## II. The Mass Action Waiver Is Enforceable, and the Grouping Provision Is for the Arbitrator.

The Court decides "disputes concerning the … Mass Action Waiver," Terms § 2(a)(4). The Mass Action Waiver is irrelevant because this is not a mass action, but if it were relevant, it would be enforceable.

### A. The Mass Action Waiver Does Not Apply to Plaintiff.

Plaintiff cannot challenge the Mass Action Waiver because that Waiver does not apply here. Courts should not "stretch to invalidate contracts based on hypothetical issues." *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 541 (9th Cir. 2021). Plaintiff responds, citing *O'Malley*, 2026 WL 2640697, at *5, that *Ramirez v. Charter Communications, Inc.*, 551 P.3d 520 (Cal. 2024), displaced *Hodges*. Opp. at 12. But *Ramirez* holds only that courts assess discovery limitations on the face of the agreement rather than waiting for discovery disputes to arise. 551 P.3d at 539. Uber's argument is not that disputes over the Mass Action Waiver's applicability lie in the future; it is that the Mass Action Waiver is irrelevant because this is not a Mass Action, so there is nothing to waive. *Gardner v. AMN Healthcare Services, Inc.*, 2025 WL 3751929 (N.D. Cal. Dec. 29, 2025), on which Plaintiff relies, draws the line that defeats his argument: it distinguishes provisions that "did not apply to the plaintiff" at all—where *Hodges* controls—from provisions that apply to the plaintiff but happen to cause no harm in the particular dispute. *Id.* at *2. The Mass Action Waiver falls in the first category.

Counsel's declaration (Dkt. 30) does not change that. Counsel attests that his firm has been "contacted by more than 50 individuals seeking to pursue similar claims." Opp. at 12 (citing Janove Decl. ¶ 4). But the Mass Action Waiver is triggered by arbitration demands *filed* by a claimant's counsel, not by inquiries counsel has received. Terms § 2(a)(3)(a). Being contacted by a prospective client is not the same as agreeing to represent one. *Cf. Pandolfi*, 2024 WL 4051754, at *6 (counsel represented 4,100 individuals with similar claims); *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 982 (N.D. Cal. 2025) (counsel's notice of dispute letter raised claims on behalf of 2,480 claimants). And whether a Mass Action ever materializes

is within Plaintiff's control. Counsel must obtain each client's informed written consent before undertaking a representation that could materially limit counsel's responsibilities to that client and must "abide by a client's decisions concerning the objectives of representation." Cal. R. Prof. Conduct 1.2(a), 1.7(b). If Plaintiff does not wish to proceed as part of a Mass Action, he may instruct counsel accordingly. Nor does Uber rely on a "litigation concession," Opp. at 12, to cure an unconscionable term. Uber simply points out that, by its terms, the Mass Action Waiver does not apply to a single plaintiff.

Plaintiff's remaining efforts to manufacture a present stake fail. His complaint that the definition of a Mass Action uses the phrase "includes, but is not limited to," Opp. at 10, is foreclosed by *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th Cir. 2026), which held that the phrase "connotes an illustrative listing" and does not render a definition unconscionable. *Id.* at 1175–77 (quotation marks omitted). And Plaintiff's theory that Section 8 exposes him to Uber's fees, Opp. at 12–13, rests upon a triple layer of speculation: it would require a hypothetical Mass Action, a hypothetical finding that Plaintiff violated the Mass Action Waiver, and a hypothetical indemnity demand.

Even if Plaintiff could challenge the Mass Action Waiver, the remedy would not help him. The Terms provide that any unenforceable provision "shall be severed" with "no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis." Terms § 2(j). The only remedy Plaintiff can seek—severing the Mass Action Waiver—would leave Plaintiff exactly where he is: a claimant required to arbitrate his claims individually. Because no ruling on the Mass Action Waiver could change the disposition of this Motion, the Court should decline Plaintiff's invitation to issue one.

**B. <u>Neither the Grouping Provision Nor the Mass Action Waiver Is Unconscionable.</u>**

Most of Plaintiff's challenges to the "Mass Action protocol," Opp. at 9, are directed not at the Mass Action Waiver but at the grouping provision in Section 2(a)(3)(c). Those arguments are delegated to the arbitrator. Under the Terms, the Court decides disputes concerning the Mass Action *Waiver*. Terms § 2(a)(4). Plaintiff's challenges to the grouping provision do not address the Mass Action *Waiver*, but instead address a procedure that applies only "in the event a Mass Action is filed and neither party exercises its right to opt out." Terms § 2(a)(3)(c)(i). Thus, the grouping provision would kick in only if the parties *do not* invoke the Mass Action Waiver and instead elect to arbitrate the mass action. The arbitrator decides

challenges to the grouping procedure—and if the arbitrator concluded that the grouping procedure operated unconscionably, the arbitrator would have full authority to say so and to decline to enforce it. *See* Terms §§ 2(a)(4), 2(j). That is the very "flexibility" whose absence *O'Malley* and *Rios* found dispositive. *O'Malley*, 2026 WL 2640697, at *8; *Rios*, 807 F. Supp. 3d at 990.

In any event, the grouping procedure causes no unreasonable, let alone unconscionable, delay. To the contrary, the grouping provision promotes efficient resolution. Plaintiff can opt out of arbitration and proceed before this Court if he does not like the grouping procedure. If Plaintiff stays in arbitration, the Special Master (at Uber's expense) resolves common threshold issues, which accelerates merits adjudication. Terms § 2(a)(3)(c). Plaintiff's accusation that the Special Master would drag her feet over threshold issues to cause "extreme, open-ended delay" is baseless. Opp. at 9. Indeed, every major arbitration provider has independently adopted the same device because it is impossible to process thousands of simultaneous filings without any measures to ensure procedural efficiency and administrative oversight. Mot. at 11. "[N]o court would tolerate having to try 7,300 identical cases separately. No arbitration provider should have to, either." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025).

The grouping provision in Uber's Terms does not suffer the defect common to Plaintiff's cases: sequential batching. *See O'Malley*, 2026 WL 2640697, at *7 (finding "an inherent risk of extreme delays" in "*sequential* bellwether processes," under which "any delay in one arbitration halts progress for all remaining claimants" (emphasis added)); *Pandolfi*, 2024 WL 4051754, at *6; *Rios*, 807 F. Supp. 3d at 990 (projecting a "13-year timeline to resolve a batch of 2,000 Notices"). After the Special Master proceedings, groups of up to 100 arbitration demands can proceed with no sequencing requirement, with each group assigned to an arbitrator. Terms § 2(a)(3)(c). If 2,000 arbitration demands were filed, *Pandolfi*'s protocol would require them to proceed in 100 *sequential* rounds of 20 arbitrations each; under Uber's Terms, 20 groups of 100 demands proceed *concurrently*. Such "concurrent adjudication of claims … significantly alleviates the problems described" in Plaintiff's cases. *O'Malley*, 2026 WL 2640697, at *8.

Plaintiff's challenges directed at the Mass Action Waiver fare no better. That Waiver allows either party to ensure that a Mass Action *will not* occur. Such a waiver accords with the FAA's emphasis on individualized arbitration and cannot be unconscionable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011). Plaintiff's complaint that the panel's threshold determination of a Mass Action's

existence has no deadline proves too much: just as courts routinely resolve threshold issues like venue and jurisdiction before reaching the merits, there is nothing unconscionable about an arbitrator deciding threshold procedural "conditions precedent to an obligation to arbitrate." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002). While that determination is pending, the Terms place the entire cost of the panel on Uber and stay all fee obligations. Terms § 2(a)(3)(b)(ii), (iv). Plaintiff's "asymmetry" point—that only consumers are likely to file 50 similar demands, Opp. at 11—is equally true of class actions, which did not stop *Concepcion* from enforcing a class action waiver. *Concepcion*, 563 U.S. at 347–48. And the opt-out operates evenhandedly: either party may exit a Mass Action and return to this docket before the Court (which is stayed pending arbitration), meaning there is no risk of Plaintiff's claims expiring. Terms § 2(a)(3)(b); *see* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

## III. <u>The Class Action Waiver Is Enforceable.</u>

Under *Concepcion*, an arbitration agreement under the FAA cannot be held unconscionable on account of incorporating a class action waiver. 563 U.S. at 344, 352. Plaintiff wrongly claims that the FAA does not preempt California's *Discover Bank* rule or the CLRA's anti-waiver provision because Uber's Class Action Waiver "remain[s] in effect" if "a claim does not proceed in arbitration." Opp. at 14 (quoting Terms § 2(a)(2)). But this claim *is* proceeding in arbitration, so *Concepcion* requires enforcing the requirement of individualized arbitration.[1]

Nor does the Class Action Waiver bar public injunctive relief. Opp. at 13–14. The Terms elsewhere expressly preserve a claimant's ability to seek public injunctive relief: "Except as to claims for public injunctive relief where required by law, the Arbitrator may award declaratory or injunctive relief only in favor of a party." Terms § 2(g). Plaintiff contends that Section 2(g) conflicts with the Class Action Waiver. Opp. at 14 n.8. But the Terms must be read as a whole, and Section 2(g) unambiguously ensures the availability of public injunctive relief precisely so that the Terms comply with *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), where it applies. And if the Terms were ambiguous about whether public injunctive relief survives, Plaintiff's own rule—that ambiguity is construed against the drafter, Opp. at 14

---

[1] Uber's Motion addresses in full Plaintiff's fallback argument that under *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), the Terms depart so far from bilateral arbitration that the FAA does not apply to them at all. Mot. at 4–5.

n.8—would mean that Plaintiff may seek public injunctive relief in arbitration, not that the Arbitration Agreement is void.

In any event, Plaintiff does not seek public injunctive relief, which is limited to relief benefiting "the general public as a whole, as opposed to a particular class of persons." *Hodges*, 21 F.4th at 542. Plaintiff's Complaint targets the "priority" option on the Uber Eats checkout screen, presented to a user at the moment he places an order. Compl. ¶¶ 3–5. An injunction regulating that in-app representation would benefit "a particular class of persons"—Uber Eats customers—not the public at large. *See Hodges*, 21 F.4th at 542, 548–49. And even if Plaintiff sought public injunctive relief and the Terms precluded it, the result would be severance of the provision precluding public injunctive relief, not invalidation of the Arbitration Agreement: the Class Action Waiver itself provides that any unenforceable portion "shall be severed," that claims subject to it "shall proceed in a court of competent jurisdiction," and that arbitrable claims "shall proceed in arbitration." Terms § 2(a)(2); *see also* Terms § 2(j).

**IV. <u>The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable.</u>**

Plaintiff's remaining challenges are committed to the arbitrator under the Delegation Agreement; should the Court reach them, they fail.

**A. <u>The Arbitration Agreement Is Not Procedurally Unconscionable.</u>**

Plaintiff's showing of procedural unconscionability is minimal at best. Far from burying the Arbitration Agreement, the Terms call attention to it in prominent, capitalized text on the first page. *Supra* Section I.B; *O'Malley*, 2026 WL 2640697, at *5. Plaintiff's invocation of Uber's modification clause, Opp. at 7, founders on the record: Plaintiff does not point to any retroactive modification of the Terms, and he affirmatively accepted the updated Terms on April 2, 2026, which contained an arbitration agreement substantively identical to the June 2026 Terms he challenges. Declaration of Allison Gordon (Dkt. 25-1) ¶¶ 13, 15–16; *see O'Malley*, 2026 WL 2640697, at *5 (rejecting identical argument where "the record does not indicate [the defendant] actually made any modifications to the arbitration agreement").

**B. <u>The Pre-Arbitration Conference Requirement Is Not Unconscionable.</u>**

Because the degree of procedural unconscionability is minimal, "Plaintiff[] must show a high degree of substantive unconscionability" with respect to the provisions he challenges. *O'Malley*, 2026 WL 2640697, at *7. He cannot. Plaintiff objects to the pre-arbitration conference requirement, but "[p]re-

arbitration dispute resolution procedures are commonplace and can be both reasonable and laudable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (internal quotation marks omitted). The mutually binding requirement asks little of Plaintiff: a written notice and a telephone or video conference his counsel may attend, with limitations tolled throughout. Terms § 2(d).

Plaintiff contends that the conference requirement violates Rule of Professional Conduct 4.2. Opp. at 8–9. But there is no Rule 4.2 violation because the Terms permit Plaintiff's counsel to be present. "If a party's counsel is present when an opposing attorney communicates with a party, counsel can easily correct any element of error in the communication …." *Mitton v. State Bar of Cal.*, 455 P.2d 753, 758 (Cal. 1969). On Plaintiff's telling, no contract to confer in person could ever be valid, because a party could retain counsel, instruct counsel not to attend, and claim a Rule 4.2 violation. *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.*, 425 P.3d 1 (Cal. 2018) is irrelevant. That case held unenforceable a law firm's engagement agreement that failed to disclose a known conflict, which is nothing like a conference requirement whose object is informal dispute resolution. *See id.* at 13–14.

Plaintiff's further concern—that an arbitrator might dismiss a demand for failure to satisfy the conference requirement, leaving his claims time-barred, Opp. at 3, 8—is misplaced. Satisfying the requirement is easy and creates no risk of Plaintiff's claims expiring: Plaintiff need only give "a good-faith effort" in a conference that can be held over telephone, and any statute of limitations is tolled during this period. Terms § 2(d). A claimant whose demand was dismissed for failure to confer could simply hold the conference and refile, and equitable tolling remains available for any unforeseen situation. *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019).

**C. <u>Plaintiff's Miscellaneous Attacks Are Meritless.</u>**

Plaintiff's remaining attacks on the Terms, Opp. at 14–15, warrant little discussion. Each concerns a provision committed to the arbitrator; each is unconnected to any dispute Plaintiff actually has with Uber; and any alleged asymmetry does not rise to unconscionability. Mot. at 15. Briefly: the Rule 11 provision expressly authorizes sanctions "for *either party's* violation," Terms § 2(d) (emphasis added); the offer-of-judgment provision is available to "any party," *id.* § 2(f); the 30-day period for disputing charges is a customer-service procedure expressly "subject to applicable law," *id.* § 7; the litigation-funding disclosure

mirrors this District's own disclosure requirement, Civ. L.R. 3-15; and the intellectual-property carveout is not unconscionable, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016).

**V. <u>Severance Is the Remedy for Any Unenforceable Provision.</u>**

Even if the Court concludes that a provision of the Arbitration Agreement is unconscionable, the remedy is severance of that provision, not invalidation of the entire agreement as Plaintiff requests. None of the provisions Plaintiff challenges is so intrinsically intertwined with the core agreement to arbitrate individually that severance would be impractical. "The strong legislative and judicial preference is to sever the offending term," and courts must take into account a severance clause "as an expression of the parties' intent." *Ramirez*, 551 P.3d at 544, 547. Plaintiff's reliance on *O'Malley* is misplaced: the agreement there contained an express *anti*-severance clause providing that, if any part of its mass arbitration procedures were held invalid, the arbitration agreement "shall be severed in its entirety." 2026 WL 2640697, at *9. Uber's Terms express the opposite intent. Terms § 2(j) (directing severance of any unenforceable provision with no impact on the remainder of the Arbitration Agreement). Nor would enforcement offend the "interests of justice." Opp. at 15. That inquiry asks whether severance would "condone an illegal scheme" or reward "a systematic effort to impose arbitration … to secure a forum that works to the stronger party's advantage." *Ramirez*, 551 P.3d at 547. Neither is present. The Terms establish a reasonable and navigable process of the kind courts routinely enforce, and the provisions Plaintiff attacks are efficiency measures collateral to that core agreement to arbitrate. Moreover, the Terms' consumer-protective provisions, Mot. at 3, are the opposite of a forum rigged in Uber's favor.

**<u>CONCLUSION</u>**

The Court should grant Uber's motion to compel arbitration and stay this action pending completion of arbitration. In the alternative, if the Court concludes that any provision of the Arbitration Agreement is unenforceable, the Court should sever that provision, compel arbitration, and stay any claims that remain in this Court pending completion of arbitration.

Respectfully submitted,

Dated: November 6, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*

Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
** Pro hac vice pending*